VETAL GUERIN, Appellant, *vs.* HENRY W. HUNT, *et al.*, Respondents.

### APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

The selection of an incompetent assignee by an insolvent debtor with a design to control the administration of the estate is a fraud upon the creditors, and will avoid the assignment. But the selection of such an assignee without an improper motive, will not render the assignment void, but only afford reason for the removal of the assignee, and the appointment of a person qualified to execute the trust.

The ignorance of the assignee, in his being unable to read and write, is a badge of fraud, yet by no means conclusive of the fact, and it may be rebutted by proof of business capacity. Proof of solvency or wealth on the part of the assignee would not be admissible to rebut a charge of ignorance.

Where a partnership makes an assignment for the benefit of creditors of the partnership effects, and such assignment is assailed for fraud, it is incompetent to prove that one of the partners had previously disposed of portions of his individual property on a secret trust in his own favor.

Where an assignment contains general words of transfer, such as "all" the debtors' estate, and subsequent words of description, or a reference to a schedule as setting it forth particularly, the latter will limit the former, and nothing will pass but what is set forth or specified.

On a charge of fraud for the appointment of an incompetent assignee, evidence of how he conducted the business of the assignment, is admissible.

The insertion in the schedule of debts of fictitious demands, and giving them preference, is a badge of fraud, but evidence is admissible in explanation and rebuttal of all proof offered to establish a charge of this nature.

Parol proof of the contents of a letter cannot be given until the absence of the letter is satisfactorily accounted for.

A Judge in charging a jury is less liable to misconstruction when he states his points and their qualifications together, yet his charge must be taken as a whole, and if it contains a correct statement of the law, it will not be held erroneous for want of methodical arrangement.

## Points and Authorities of Appellant.

The first exception relied upon is found in folio 67. One of the "badges of fraud" is the insolvency of the Assignee; another, his incompetency. Proof going to establish such or analogous facts, is always admitted against the integrity of the assignment, and is always explainable by other facts indicating good faith. *Burrill on Assignments p.* 400.

Precisely the same doctrine was enunciated by this Court in *Filly et als. vs. Register,* 4 *Min. R.* 405; [*Opinion of Court.*] Proof was there offered showing the notoriety of Mr. Burkleo, and about the premises in controversy. It was received by the Court below, and urged in this Court as error.

The cases are precisely similar, and would be stated in this wise: "Insolvency in the Assignee is always a badge of fraud and solvency goes to show the contrary." It is difficult to see any distinction. Here the defence had proved by the witness that he could not read nor write, thereby attacking his competency. This testimony went directly to the competency of the Assignee and also to the *bona fides* of the Assignors. We offer affirmative evidence in support of good faith, of the same character, and it is rejected.

The next testimony offered and rejected against the Plaintiff, is found in folio 208 of the case, and was to show the value of the property conveyed to Cummings, Seaman & Co.

I concede to a certain extent the doctrine contended for by Respondent's counsel, that false preferences of fictitious claims is evidence going to show bad faith. This being the position assumed, it was certainly competent for the Plaintiff to rebut the testimony of witness Sanborn, and the deeds. This testimony tended to show that $2,500 of property had been conveyed to Cummings, Seaman & Co., in reduction of their debt against Bartlett & Cazeau, which would, of course, mitigate the claim, *pro tanto*. It was, therefore, as seems to me, strictly competent for us to show that the property actually conveyed, was of little or no value; and thereby abate the force of the presumption arising out of these facts.

II.—I will next advert to testimony received under objection of Plaintiffs' counsel respecting certain conveyances from Cazeau, one of the firm making the assignment to Guerin, the Assignee of the individual property of Cazeau, and other conveyances from Guerin to persons outside.

The contents of the testimony are substantially these:

1st. Deed from Cazeau and wife to Guerin, of lots on 9th street, dated February 5th, 1857, for consideration, stated therein, of $7,000.

The object of the testimony was announced to be, that while the assignment purports to convey all the property of the Assignors, Cazeau had conveyed the property in question on a secret trust to himself, and was, therefore, the beneficial owner thereof himself.

2d, Deed dated February 19th, 1857, of part of same prop-

erty to Geo. Hadfield, consideration $1,000, from Guerin and wife to Hadfield.

3d. Deed from Guerin and wife to Thos. Rossiter, of part of same property, dated June 25th, 1857; consideration $2,000.

4th. Deed from Guerin and wife to Ingalls, dated August 8th, 1859, consideration $2,600.

5th. Deed, September 20th, 1858, from Guerin and wife, consideration $4,000, to Cazeau and wife, of lots 3 & 4 in block 5.

6th. Deed from Cazeau and wife to Guerin, reconveying same last two lots, dated August 8th, 1859.

It appears from the testimony connected with the transfer, that no money was paid down upon the original conveyance for $7,000, but it was agreed that Guerin should deed Cazeau's wife two other lots to be selected by her, and assume a mortgage then owned by Chas. W. Borup for $3,000, incumbering the same property; that the mortgage was paid by Guerin; that the conveyance was made to Mrs. Cazeau, as shown by deed 25th Sept., 1858; and that about a year afterwards, Guerin bought back the property deeded to Mrs. Cazeau, for $1,600.

Before presenting special views respecting the testimony, it is important in some (although not in all the aspects in which I shall consider it,) to determine the character of the assignment.

It was a partnership assignment made by the firm of Bartlett & Cazeau, of the firm property described in a schedule.

That this was a partnership assignment of copartnership property strictly, would hardly seem to admit of a doubt; and I discuss the question, as the point is made, that it was an assignment both of individual and firm property, and urged with apparant seriousness.

The form is taken from that laid down in Burrill's work on assignments for a Copartnership Assignment. *Vide Burrill, p.* 642.

It is substantially the same form for a similar instrument in McCall's forms, and the Clerk's Assistant, in common use. *2d Ed. Burrill on Assignments, p.* 354; *id. p.* 266, &c.

All the assignment pretended to convey was certain specific
vol vi.—48

partnership property, to pay firm debts first, and if surplus remained, individual debts.

The position being granted, the acts or declarations of one partner respecting his separate property, have no relevancy. They could only be shown to defeat a copartnership deed, after it was shown that a quasi conspiracy existed between the parties to hinder, &c.   Until this is shown the fraudulent acts of one partner are no evidence of or against the acts of the firm.  1 *Greenleaf on Evidence, sec.* 3.

This is the uniform doctrine.   The principle is not doubted that acts or declarations of either partner respecting partnership property, or within the scope either actual or ostensible of the partnership business, are admissible.  *Vide opinion of Chancellor in Bogent vs. Hay.,* 9 *Paige, p.* 302.

Again :  Admit, for a moment, that the proposition just urged is untenable, the transactions referred to are too remote and disconnected in point of time and circumstances.   The doctrine which admits in evidence other contemporaneous fraudulent acts, is but the old doctrine which admits proof of all matters connected with the *res gestæ.*   It could not be shown in a case like this, that a man was morally oblique— that he was a cheat—or the like.   Contemporary acts or declarations are only admissible when they are so related to the central act in controversy as to be constituent thereof, or as parcel of a series of fraudulent acts.   I take the rule applicable to the class of evidence, to be well and completely stated in the case of *Aplharp vs. Comstock,* 2 *Paige,* 482.   The Chancellor lays down the rule substantially in these words : " When a fraudulent combination is established, the acts and " declarations of any of the parties thereto, may be proved " against the others ; but only such acts and declarations as " constitute a part of the *res gestæ." Vide* 2 *Paige,* 482; *also* 2d *Ed. Burrill on Assign. pp.* 422 & 442;  3 *Cowan, Edw. & Hill notes, p.* 690; 1 *id., pp.* 185, *&c.;*  2 *id., pp.* 564, *&c.; Vine vs. Winter,* 8 *Dana,* 247.

If the acts of Cazeau respecting his separate property are admissible at all without involving an absurdity, I can see how, by a stretch of the rule we have been discussing, the deed from Cazeau and wife, of 5th Feb., 1857, might possibly be

admissible; but how it became material to show how and when and for how much Guerin disposed of the property afterwards, passes my comprehension.

Guerin conveys part of the property, 19th Feb., 1857, to Geo. Hadfield—in 1858 he conveys another portion to Rossiter, and in 1859, the balance to Ebenezer Ingalls. What of it? Counsel stated that his object was to show that Cazeau was the beneficial owner of the property; that the original conveyance was for his benefit, &c. If it proves anything, it proves just the opposite state of facts.

The Court will observe that this trial might about as well have been lumbered with the entire records of Ramsey County. That such a mass of testimony as was introduced in a case of this character, must have prejudiced the Plaintiff, is easy to see; and that it did so, I have felt.

Again; laying out of view the objections I have urged; insufferable as I believe the reception of the testimony of Cazeau's acts, to wit, that they are the acts of one of the partners, relating to his distinct property not contained in the assignment, and also that they are too remote and disconnected with the acts in controversy, it is submitted that in no case are the fraudulent acts of a partner admissible to characterize a transaction in which all the members unite, unless privity is shown in the others.

III.—I will next classify as being of the same general character, the testimony found in folios 169, 172–3–4, 185–6.

The witnesses were allowed to answer, in these folios, substantially as to how much money had been received for sales made of the goods, after the assignment and before the attachment; whether anything of the amount realized had been paid over, and whether the creditors of Bartlett & Cazeau had been notified by the Assignee, of the assignment.

There is nothing better settled than that acts subsequent to the assignment cannot be used to avoid it. *Burrill.*

It is equally well settled that the misconduct of the Assignee, although it may subject him to removal, and entitle the creditors to the appointment of a Receiver, cannot operate against the integrity of the deed. Here the assignment was made Feb. 25th, 1857, the attachment about the 10th of May,

1857. Possession had been taken and certain of the property sold. What materiality was then in proof how much money had been received in these few days? What in proof that no dividend had been made amongst creditors pending the litigation? or what in proof that no notice had been given? This testimony was calculated to injure the Plaintiffs' case, and its reception was clearly error. This Court has decided the principle here asserted in *Murray vs. Grace. (not reported.)*

IV.—The testimony of John B. Sanborn, and the deed to Cummings, Seaman & Co., (folio 186, &c.) is only adverted to for the purpose of calling the attention of the Court to what we believe manifest error in the exclusion of testimony to prove the actual value of the property, (*vid.* fol. 208.) We have given one reason in this connection *supra.*

X.—The testimony of the contents of the letter elicited from the witness Dufresne was improperly admitted (see fol. 199-200.) There was no foundation laid. The rule is that the very best evidence of diligence should be given to admit of secondary evidence of this character. Mr. Dufresne speaks of the receipt of the letter—says he has not got it—and don't know where it is. It does not appear that he made any inquiry for the letter. *Vide* 2 *Edwards' Notes, pp.* 564-5.

VI.—We object to the charge of the Court below, found in folio 207 of case, for this reason: the obnoxious charge was, substantially, that if the Assignors knew at the date of the assignment, that the Assignee was incompetent, it was evidence from which the jury might find the assignment made with intent to defraud.

This was tantamount to instructing the jury, that the facts proved and unexplained, avoided the assignment as a legal conclusion. We then ask, would the acts admitted avoid an assignment fair on its face? We concede, that such being the fact, it would be evidence proper for the consideration of the jury, in connection with other circumstances showing the integrity of the deed. The charge given in these terms, was calculated to mislead the minds of the jury as to the weight to be given to the evidence. It did in fact mislead that *intelligent body!*

VII.—The Court below erred in refusing the request of

Plaintiff's counsel, found in folio 226-7 of case, being 2d & 3d request of Plaintiff. These requests were, in substance, that, 1st. The assignment was a copartnership assignment of partnership property only. 2d. That it did not purport to convey individual property, but left such property subject to the debts of the respective owners of the property.

I have already discussed the character of the assignment, and have considered it with reference to the proof admitted of the distinct acts of Cazeau respecting his separate property.

There is still another view in which the refusal under consideration was erroneous. In this connection, for the purpose of the assignment, I will for a moment concede that Cazeau's acts relating to his separate property, were admissible. These refusals were none the less erroneous and calculated to mislead, if the Court was wrong in refusing to treat the assignment as a copartnership deed of specific or copartnership property.

If the assignment was general, of all property, the fact that one of the partners had shortly before transferred a portion of his separate estate, would have much greater significance than it would if the assignment related only to partnership property. The assignment might in the one case be regarded as one of a series of similar acts touching the same class of property, and not an independent act treating with a distinct kind of property.

VIII.—The request of the Plaintiff, found in folio 228-9 of case, has already been discussed. *Vide fol.* 230-31.

IX.—It appears to me that this request of Plaintiff's counsel stated precisely what the books mean. A man may not be able to "read, write and cipher," and may still be one of the best and safest business men in the community. This very Plaintiff, with his splendid fortune, his well recognized honesty, and caution in all business affairs, furnishes an apposite illustration.

The fact of competency is only to be considered as it affects the intent of the Assignors. If Plaintiff was selected of known incompetency, with a view to his control by the assignors, by reason of his imbecility, then, and in no other conceivable case, could the intent be characterized by proof of this character.

The views here suggested are made more apparent and the error of the Court below more conspicuous, in the 6th request [folios 231-2-3-4] refused.

There was more obvious error, if possible, committed in the charge actually given under the sixth request of Plaintiff. The Court in effect charged that insolvency raised a legal presumption of fraud in the Assignors.

X.—We believe the Court erred in refusing the Plaintiff's seventh request, in folio 236. It has been held over and again, that the employment of the assignors will not invalidate the assignment, for the reason that in most cases they are the best acquainted with the affairs of the firm, and most competent to close them up.

XI.—We believe the Court erred in refusing to grant the eleventh request of Plaintiff's counsel, found in folios 238-9.

We have already seen by authorities cited, that subsequent acts of either the assignors or assignees cannot be used to invalidate the deed, unless they are so related to the circumstances surrounding the instrument as to connect themselves directly and inextricably with it.

If Cazeau or either of the assignors, were found meddling with or carrying off portions of the assigned property, with the knowledge or consent of the assignees, such evidence would be admissible, as tending to show that such might have been the understanding with which the instrument was executed.

A fraud upon the assignee—a larceny of the assigned goods by either of the assignors—could, certainly, be no evidence of the bad intent of the instrument itself.

Points and Authorities of Respondents.

II.—The question propounded by the Defendant's counsel to the Plaintiff, Vetal Guerin, when examined as a witness for the Defendants, "Did Cazeau convey to you by warranty deed, for a consideration real or pretended of $7000, some lots on 9th street in the city of Saint Paul, on the 5th day of February, 1857?" and the answer of the witness thereto, were properly allowed by the Court. And the deed referred to in

the witness' answer, from Cazeau and wife to the Plaintiff of the same lots on 9th street, bearing date on the 5th day of February, 1857, was properly received in evidence.

Also, that the Plaintiff sold and conveyed a portion of the same property on the 19th day of February, 1857, by deed to George Hadfield for $1000. And the deed from the Plaintiff to Hadfield was competent evidence in the chain of testimony and was properly received.

Also the evidence of the sale and conveyance by the Plaintiff of another portion of the same property which Cazeau had conveyed to him, to one Thomas Rossiter, on the 25th of June, 1857, for $2000, and the deed of the same from the Plaintiff to Rossiter, was competent evidence and properly received in connection with the other evidence given by the Defendants.

Also the evidence of the sale and conveyance by the Plaintiff of the remaining portion of the property deeded to him by Cazeau and wife on the 5th of February, 1857, and the deed of the same to Ebenezer Ingalls on the 8th of August, 1859, for $2600, was properly received in the connection and relation it had with the other facts in the case.

The question propounded to the witness Guerin, viz : "Did you pay Cazeau anything for the lots he conveyed to you on the 5th of February, 1857?" and the answer of the witness thereto, contained in *folios* 161 *to* 166 *inclusive*, was competent and material testimony upon the question of good faith, and the intent with which Cazeau, at least, one of the assignors, made the assignment, and that the assignee Guerin knew of the fraudulent intent when the assignment was made. The record of the deed of conveyance from the Plaintiff Guerin to the wife of Cazeau, dated the 20th day of September, 1858, consideration $4000 expressed in it, conveying to Mrs. Cazeau lots 3 and 4 in Block 5 in Roberts & Randall's addition to St. Paul, and the subsequent deed from Cazeau and his wife, dated August 8, 1859, to the Plaintiff Guerin, reconveying the same lots to the Plaintiff, for the expressed consideration of $3000, (*folio* 167) were properly admissible evidence, connected with, and explanatory of the conveyance from Cazeau and wife to the Plaintiff on the 5th of February, 1857. That conveyance was the consideration for the subse-

quent deed from the Plaintiff to Cazeau's wife of the two lots, September 20, 1858. And the deed of the same lots from Cazeau and wife back to the Plaintiff, on the 8th of August, 1859, was a part of the same transaction, and in consideration that the Plaintiff would pay Cazeau $1600, in cash, out of the proceeds for which he had sold the property conveyed to him by Cazeau, February 5, 1857, instead of allowlowing Mrs. Cazeau to keep the two lots.

Let us examine the facts attending these conveyances, and their bearing and materiality as evidence upon the question of the intent and good faith with which the assignment was made.

Firman Cazeau and Louis Bartlett, Jr., made a general assignment purporting to assign all their property, real and personal, to the Plaintiff as assignee, in trust for the benefit of their creditors, and payment of their debts, on the 23d day of February, 1857.

On the 5th day of the same month, only eighteen days before the assignment, and on the very eve of making the assignment, at a time when they are presumed to have known all about their own circumstances, the amount of their property, the debts they owed, their solvency or insolvency, Cazeau, one of the assignors, conveys by warranty deeds, real estate which he owned in the city of Saint Paul, the legal title to which was in him, and which was at the time subject to the attachment or execution of his creditors, and which was then considered by the parties worth $7,000, to the Plaintiff, without the payment of any consideration whatever. For the Plaintiff swears that he " paid nothing for the deed from Cazeau, but agreed to pay something." He then says he was to pay him two lots near the Capitol, including a brown house, or three, or three and a half lots on 11th street, on the corner of St. Peter street, he was to give him one of those pieces of land, provided the Plaintiff also had to pay the mortgage then held by Dr. Borup upon Cazeau's property for $3,000. The value of the two lots with the house near the Capitol, or of the three and a half lots on 11th street was agreed upon at $2,500. Cazeau agreed to bring his wife to see them, and select one piece of property or the other. The

Plaintiff says it laid in that way a year or so, before Cazeau determined which he would select, and he then finally elected to take the two lots near the Capitol, and on the 20th of September, 1858, the Plaintiff made the deed of those two lots to Cazeau's wife, and this was more than a year and a half after the assignment, and the sole consideration was the property conveyed by Cazeau to the Plaintiff, a few days before the assignment

Then out of the moneys arising from the sales of the property Cazeau had conveyed to him, the Plaintiff says he paid the mortgage of $3,000 and interest to Dr. Borup. And this, it is to be observed, was all paid after the assignment was made.

On the 19th of February, only four days before the assignment, the Plaintiff sells and conveys a portion of the property received from Cazeau to Hadfield for $1,000 in cash. On the 25th of June following, he sells and conveys another portion of the same property to one Rossiter for $2,000 in cash. And on the 8th of August, 1859, he sells and conveys the remaining portion of the same property to Mr. Ingalls for $2,700 in cash. Thus receiving in cash an aggregate sum of $5,700 for the property. And all this is done before the terms and conditions of his purchase of the property from Cazeau is definitely fixed. For on the 8th of August, the same day he makes the last sale and deed to Ingalls for $2,700, we find him paying $1,600 of that money over to Cazeau, and Cazeau and his wife, on that day convey back to the Plaintiff the two lots and brown house, which he had before conveyed to Cazeau's wife. And all these transactions relate back to and are founded upon the consideration of the property conveyed by Cazeau to the Plaintiff a few days before his assignment.

Is it not a fair inference from these facts that he conveyed this property to the Plaintiff in view of making the assignment, that he conveyed it to avoid assigning it for the benefit of his creditors, or the creditors of Bartlett and Cazeau, for it was liable to be attached for their debts; that he conveyed it to put it beyond the reach of his creditors.

Not a dollar of consideration had been paid by the Plaintiff for it, when the assignment was made, and on the eighth of

August, 1859, we find the Plaintiff paying Cazean $1,600 in cash, the proceeds of this very property.

Does not the conclusion inevitably follow that the property was held, and intended to be held by the Plaintiff, in trust for Cazeau, and for his sole benefit, and this secret trust, thus created on the eve of the making of the assignment, is certainly competent evidence for the jury to consider in determining the intent of the assignors in making the assignment; and the only possible mode of proving the existence of this secret trust, was by proving the different acts and means used in carrying out and consummating it. What disposition the Plaintiff made of the property, and to whom he paid the proceeds; because these acts relate back to, and are the natural offspring of, the object and intent of the parties, existing at the time the property was conveyed to the Plaintiff, and is the best evidence of the purpose and intent for which it was placed in his hands. *See Burrill on Assign.* ch. 33, p. 413; 2 *Sanford*, p. 594; *Filder vs. Day et al.;* 1 *Greenleaf's Ev*, p. 71, sec. 53; 53; 1 *Sanford's Chan. Rep*, p. 334, *Cooke vs. Smith et al.* 1 *Phillipps' Ev. Cowans., Hill & Edwards' Notes, pp.* 202, 203, *and* 204, says:

It is a question for the Court in each case to consider whether the declaration or act proposed to be received, does or does not come within a reasonable time of the disputed act; and for this purpose the Court will inquire into the existence of any connecting circumstances between the declaration and the act of bankruptcy. The rule is not confined to the precise act in question.

4 *Minnesota Rep.* p. 405, *Filley et al. vs. Register.* The Court says: "There is no possible way of proving the motives which actuate men in the affairs of life, save by proving their acts, and all the concomitant circumstances, and from them deducing the motives, upon principles which observation and experience have taught us rule human conduct."

It makes no difference whether the secret trust in favor of the assignor appears on the face of the assignment or exists by any other arrangement between the assignor and assignee, made in contemplation of the making of an assignment, it is equally fatal.

In the first instance, if it appears on the face of the assignment, it is void in law, and it is the duty of the Court to pronounce it so.

In the second, if it appears from extrinsic evidence, then it is a question of fact for the jury to determine.  6 *Hill, p.* 438, *Goodrich vs. Downs;* 11 *Wendell,* 187, *Grover vs. Wakeman.*

3d. The several questions put to the witness, Guerin, by the Defendant's counsel, (in folios 169, 170, 171, 172, 173, 174 and 175,) were properly allowed by the Court.  Three years had elapsed from the time of the assignment to the time of the trial, and it was competent and proper to inquire what disposition the assignee had made of the assigned property; to ascertain if he had acted under the assignment, and also in view of showing, as the Defendants claimed to be the fact, that considerable portions of the property had been secretly removed from the store to different places of deposit, and finally into possession of the assignors; and this was a fact in connection with the other evidence, which went to characterize the intent with which the assignment was made.

And the inquiry whether the assignee had ever given any notice of the assignment having been made, to any of the creditors, after the lapse of three years, especially in view of the fact that most of the creditors resided in Eastern cities, was clearly a material inquiry, as was also the question, whether he had ever paid over any of the proceeds of the assigned property to any of the creditors, upon the question of the competency and qualifications of the assignee to perform his trust, which is a point we shall hereafter consider as evidence of the intent of the assignors, in selecting an assignee who was wholly incompetent to perform the trust.

But it becomes wholly unnecessary to consider the propriety or impropriety of the first four questions, as contained in folios 169, 170, 171 and 172, or the ruling of the Court in allowing them to be put, because they were all answered in the negative, and the answers given rendered the questions wholly immaterial, and the Plaintiff could in no way be prejudiced by them, and cannot now complain of their competency or incompetency, because the answers removed the objection, if any existed.

The questions of the Defendant's counsel contained in folios 186 and 187, and objected to, were material and proper inquiries upon the question of the incompetency and unfitness of the assignee, to show how he had managed and conducted the business under the assignment.

The deed from L. Bartlett, jun., one of the assignors, to the creditors, Cummings, Seaman & Co., of the one undivided half of the store and lot in Faribault, executed on the 20th of February, 1857, in payment of $2,500 of their debts, was properly received in evidence, and was material to show that when Bartlett & Cazeau made their assignment on the 23d of February, and stated their indebtedness in the schedule to Cummings, Seaman & Co,, to be $5,555.25, and made them preferred creditors for that whole amount, they had, in fact, paid $2,500 of that same indebtedness, by the sale and conveyance of the Faribault store and lot to Cummings, Seaman & Co., only three days before the assignment, and were then, by their assignment, stating and preferring the payment of a. fictitious debt, to that extent in fraud of their other creditors. See folios 197 and 198.

IV.—The 5th and 6th instructions requested by the Defendant's counsel, and given to the jury, were correct and properly given.

The fifth predicated upon the utter incompetency of the assignee to perform the trust, and the assignors' knowledge of that fact—if the jury should so find—at the time the assignment was made.

The sixth assumes, that certain facts there enumerated, and which the law denominates badges of fraud, are circumstances from which the jury may find that the assignment was executed with intent to hinder, delay, &c.

In other words the instruction informs the jury of the legal effect of certain acts when connected with an assignment, and the light and character in which the law regards them, their effect as legal evidence.

The ninth instruction requested by the Defendant's counsel and given by the Court, is in the language of the statute, and may therefore be presumed to be correct.

V.—The Court did not err in refusing to give the 2d, 3d,

and 4th instructions requested by the Plaintiff's counsel. Because these instructions assumed the fact, that the assignment was only a partnership act and covered and assigned only the partnership property of the assignors, and not their individual property, while the assignment, upon its face, shows that it was executed individually and separately, by the assignors, Lewis Bartlett, jr., and Firman Cazeau, as their individual acts. Their full names each, are inserted in the body of the assignment as parties of the first part.

The language of the instrument assigns and conveys all and singular the lands, tenements and hereditaments of the parties of the first part, and all the goods, chattels, wares, merchandize, bills, bonds, notes, book accounts, claims, demands, judgments, choses in action and property of every nature and description of the said parties of the first part, without any reservation or restriction whatever, and there is no reference made in the assignment to the partnership property of the assignors, and nothing in it indicating that partnership property only, is intended to be assigned. By its terms it assigns all the property real and personal of the assignors, of every nature and description. It clearly conveys and was intended to convey all the individual property of the assignors, and the law gives it that construction. *Burrill on Assignments, page* 348; 2*Sergeant & Rawle, page* 178, *Wharton vs. Fisher;* 17 *Vermont, p.* 390, *Dana vs. Lull;* 2 *Hilliard on Real Property, page* 339.

A deed is always construed most strongly against the grantors, yet the language must control. As a strong circumstance, to show that the assignors understood and intended it to be an assignment of their individual property, the store and lots in Faribault, which was the individual property of L. Bartlett then, and the undivided half of which he had sold and conveyed to Cummings, Seaman & Co., only four days before, was put in the schedule of assetts. *Folio* 54.

VI.—The Court properly refused to give the 5th and 6th instructions requested by the Plaintiff's counsel. See folios 230, 235, 232 and 234, and did properly instruct the jury, that if they found that the assignee was an incompetent person to execute the trusts created in the assignment, it would be a

fact from which the law presumes a fraudulent intent in the assignors, and it was for the plaintiff to disprove that presumption.

VII.—The qualification which the Court made to the 9th instruction requested by the Plaintiff's counsel, was correct, and the refusal to charge in the language of the request, was correct.

The 11th instruction requested by Plaintiff's counsel was properly refused; because it sought to take from the jury and to withdraw from their consideration, a fact which was material and proper for them to consider in connection with other evidence in the case, upon the question of the intent of the assignors and good faith of the assignment.

VIII.—The Plaintiff was an improper person, and admittedly incompetent, to execute the trusts under the assignment, which the assignors well knew when the assignment was made, and the selection of such a person for assignee is presumptive evidence of the fraudulent intent of the assignors, which renders the assignment void. *Burrill on Assignments*, 61, 62, *and* 63.

In that case there were three assignees, but the Court held that one of them was disqualified from properly attending to the discharge of the duties of the trust, by reason of his residing in Philadelphia, the assigned estate being in New York. That the second was disqualified from blindness, although he was proved to be a man of sound judgment, and capable of advising in the disposition of property; and that the third was incompetent to act, because he was illiterate, and could not read or write, although he was shown to be an active man, and in other respects competent to take charge of the business.

The Court say, "The effect of such an assignment was manifestly to throw the management of the property into the hands of irresponsible agents, or to keep it within the control of the assignor," and upon the sole ground of the incompetency of the assignees, pronounce the assignment void. 4 *Dal. Rep. p.* 76, *Burd vs. Smith;* 8 *Paige Ch. Rep., p.* 417, *Reed vs. Emery;* 2 *Sanford's Ch., pp.* 353-4-5, *Currie & Currie vs. Hart et al.;* 1 *Barb. p.* 214, *Connah vs. Sedgwick.*

Again, the Plaintiff testified that he kept his brother-in-law

to do his private business, to do his writing and keep his accounts; that his brother-in-law had done so for six years; he says he can't keep accounts; that he does not write his name; he reads French a little in print, but not in writing; can't add up figures; and cannot get along without some one to do his own writing; that he could not get along in his own business without his brother-in-law; he cannot read any English, and has no education. He says some years have twelve months and some less; sometimes there are fifty-four weeks in a year; some years have more weeks, and some less. He was examined through an interpreter in the French language; and all his deeds given in evidence have the sign of the cross.

Such was the melancholy evidence the Plaintiff gave of his qualifications and competency to discharge the duties of the trusts reposed in him under the assignment.

The assignment and schedules show that the personal property assigned amounted to $31,698.00, consisting of $27,581.00 of merchandise, $3,992.00 debts due the assignors, and $125.00 of other personal property, exclusive of the real estate in Faribault. The Plaintiff says he took possession of all this property immediately after the assignment, and his brother-in-law and clerks commenced selling it. Three years had passed from the time of the assignment before the trial, and yet the plaintiff swears that he had never given any notice of the assignment to the creditors, most of whom resided in Eastern cities.

He says he never paid any of the proceeds of the assigned property to the creditors; that he does not know what amount of property was assigned to him; and don't know what the amount of the proceeds is now in his hands.

And how should he know? He could not superintend the taking of an inventory of the property, or read a word of it after it was taken. He could keep no account of the sales of the property, or proceeds realized, or of the expenses incurred in the business, nor could he read an item of the account kept by others. He was entirely dependent upon agents in no way responsible to the creditors for the faithful performance of the trust, compelled to rely upon what they told him in relation to the business, without any possible means of

knowing the truth of their representations. All of which confirms the entire incompetency of the assignee to discharge the duties of the trust.

IX.—The assignors by their assignment made an illegal and fraudulent preference of their whole alleged indebtedness $5,555,25 to the creditors Cummings, Seaman & Co., when in fact $2,500 of the same indebtedness had been paid a few days before making the assignment, by the sale and conveyance of the Faribault store and lots. Thus by the terms of the assignment, they stated and preferred the payment of a fictitious debt, to the amount of $2,500, which renders the assignment illegal and void as to the other creditors. *Burrill on Assignments, p.* 135.

The writer says: " The preferring a fictitious debt, in an assignment for the benefit of creditors, will have the effect of rendering the assignment void." 2 *Barb. Sup. Ct. Rep. page* 10 & 11, *Webb vs. Daggett.*

In this case before making his assignment, the assignor had confessed a judgment without consideration, which was placed in the first class of preferred debts in the assignment, and upon that ground alone, the assignment was held to be fraudulent and void. 2 *Sanford (Superior Court) page* 594. *Case of Ziedler vs. Day et al.*

It was held that a provision in the assignment for the payment of a fictitious debt, is not only void but has the effect of rendering the assignment void *in toto,* because it is evidence of the fraudulent intent of the assignor. And the uniform construction of the Courts has been that a deed void in part, as being in violation of a statute, is void *in toto.* 5 *Cowen, p.* 547; *Mackie vs. Cairns;* 11 *Wendell, p.* 187; *Grover vs. Wakeman.*

*Burrill on Assignments,* 136, 4 *Sanford, page* 79, *Breck vs. Cole.*

In the case at Bar, the indebtedness of the assignors to Cummings, Seaman & Co, is stated in the schedule of debts annexed to and made a part of the assignment, to be $5,555.25, the payment of which is first preferred over the other debts. The witness, Mr. Sanborn, swears that he was in Cummings, Seaman & Co.'s store in New York, the day they received

news of their claim against Bartlett & Cazeau; they stated to the witness that their claim against Bartlett & Cazeau was about $5,000, and informed him that a payment had been made upon it in real estate, that Bartlett & Cazeau stated in a letter that Cummings, Seaman & Co. had just received from them by mail, and which the witness then saw and read, that they had conveyed real estate in Faribault to Cummings, Seaman & Co., for $2,500 of their debt, and which was worth that sum. This was the last of February or first of March, 1857. That Cummings then said that their claim against Bartlett & Cazeau was about $5,000, and the conveyance had been made to them in part payment of it.   Folio 197.

The deed given in evidence from Louis Bartlett, jun., to Cummings, Seaman & Co., was executed on the 19th, and recorded on the 20th day of Feb., 1857; the consideration, $2,500, an absolute conveyance by its terms, containing the usual covenants of warranty. Folio 198.

The witness, Mr. Sanborn, further testifies that he paid Cummings, Seaman & Co. $50 rent for the occupancy of the store while the goods were in it under the attachment; that this claim for rent was made by them in June, 1857. See folio 199.

The statements made to the witness by Cummings, the senior partner of the firm, after they had received information of the conveyance, that it had been made to them in part payment of their claim, and their subsequently demanding and collecting the rent of the store, several months after the conveyance, clearly establishes the fact that they accepted the deed and received the property as a part payment of their claim. Upon this fact the evidence was uncontradicted—there is no attempt made by the Plaintiff to show that it was not accepted by Cummings, Seaman & Co. as a payment—no pretence that it was received in any other manner or for any other purpose; but their statements are that it was in part payment. And a few months after they exercise their rights of ownership over the property by demanding and collecting rent.

X.—The property of the assignors at the time of making the assignment, was much more than sufficient to pay all their

vol vi.—50

debts and liabilities, if honestly and fairly appropriated for that purpose and so the assignors believed at the time. The whole indebtedness stated in the schedules of the assignment is $23,400.91, and no other indebtedness is stated or shown to exist, either by the assignment and schedules or by the proofs in the case.

It is true that the assignment provides that out of the residue, if any, of the proceeds of the assigned property, after paying all the partnership debts, the assignee shall pay and discharge all the private and individual debts of the assignors, &c.; but the assignment does not state, or even re-recite that there are any individual or private debts of the assignors. There is no schedule of individual debts; and. there is not a word of evidence in the whole case tending to show that the assignors owed any individual debts, or any debts other than those contained in the schedule. They have given a schedule of their debts forming a part of the assignment, and there is no statement or recital in the assignment, or evidence in the case, that any other indebtedness of any character or amount existed against them ; and in the absence of any statement or evidence of such facts, it cannot be presumed ; because there are no facts in the case from which such a presumption can arise.

It was a primary duty of the assignors to furnish a full and complete schedule with the assignment of all their debts for the information of the creditors, and in the absence of proof to the contrary, the presumption is that they have done so, and that the schedule furnished does show all their indebtedness of every kind.

The assigned property contained in the schedule to the assignment, consisting of goods, wares and merchandise, according to the valuation of the assignors, put down and carried out at the time, amounted to $27,581.90.

The debts due to the assignors, as contained in the schedule and proved in evidence amounted to $3,992.40. Other personal property of the value of $125. *See* 4, *Minn. Rep. pp.* 310 *to* 317, *Burt vs. McKinstry & Seeley et al. and cases there cited;* 3 *Monroe, page* 1, *Ward vs. Tratter;* 8 *Dana, p.* 247, *Vernon vs. Norton;* 1 *Paige Ch., p.* 305, *Beck vs. Burdett;* 7 *Paige Ch. p.* 163, *Butler vs. Stoddard.*

The jury are the exclusive judges of the intent with which the assignment was made. They have passed upon all the questions of fact in issue, and their verdict is fully supported by the evidence.

J. B. BRISBIN, Counsel for Appellant.

M. E. AMES, with SANBORN & LUND, Counsel for Respondents.

*By the Court*—FLANDRAU, J.—This action is to recover the value of certain chattels alleged to have been wrongfully taken by the Defendants from the Plaintiff. The defence is, that the Plaintiff is assignee of Louis Bartlett, Jr., and Firman Cazean. That the assignment is fraudulent. That the Defendants are creditors of the assignors, and that the taking was for their debt and made under attachment duly issued and levied, &c. Upon the trial the assignment was attacked as being fraudulent in fact, having been made to hinder and delay the creditors of the assignors. The first evidence that was introduced to show the fraudulent intent of the assignors, came out on the cross-examination of the Plaintiff. It was proved that the assignee was illiterate and could not read or write. The selection of an incompetent assignee is regarded in the law as a badge of fraud. The assignor having the choice of his assignee without consultation with, or consent of his creditors, must take care that he appoints a person competent to protect the rights of all parties interested under the assignment. If it appears that the selection of an incompetent assignee was made in order to allow the assignor to control the administration of the estate, then the assignment will be declared void, because such an intent on the part of the assignor would be a fraud upon his creditors. If it should appear that the assignee was incompetent in fact from any cause, but that his selection was not made from any improper motive on the part of the assignor, then the assignee would be subject to removal at the instance of a creditor of the estate, and a proper person would be substituted by the Court to carry out the trust. The assignment would be sustained in such case, because of the absence of the vitiating element in

its inception, to-wit, a fraudulent intent in the assignor. This intent, however, when it is not apparent on the face of the instrument, is always a question of fact and must be determined by the evidence adduced. It does not necessarily follow that because an assignee is illiterate and cannot read or write, that he was selected by the assignor for that reason, and with the fraudulent design of retaining control of the assigned property ; yet if a jury should upon that fact alone so find, it would require a very strong array of counter facts to induce a Court to disturb the finding. And should a jury vindicate the competency of the assignee, and the good faith of the assignor in his selection, notwithstanding his inability to read and write, it would be equally difficult to interfere with the verdict. The question therefore as to the validity of the assignment is upon the intent of the assignor, ascertainable not by any one fact or circumstance, but by every fact and circumstance that may throw light upon the transaction. If the fraudulent intent is sought to be established by proving the appointment of an assignee, incompetent by reason of being illiterate, then any facts may be shown in contradiction of that fact, or its effect may be avoided by proof of a sufficient degree of intelligence and business capacity to justify the choice of the assignee, notwithstanding his want of scholarship ; because a man may be fully capable of administering an estate and not know how to read or write, yet we admit that such in our opinion is not very often the case.

In answer to this proof the Plaintiff proposed to show that the assignee was possessed of a large property at the time of the assignment, which he was prevented from doing by the ruling of the Court. There was no charge made by the Defendants that the assignee was insolvent, which fact is generally a badge of fraud ; had there been, it would have been competent for the Plaintiff to show the contrary ; but it is difficult to see how the proof of solvency could aid the defect of want of education, especially when the presumption is in favor of solvency, when nothing is shown to impeach the assignee in that respect. Blindness in an assignee is regarded as a badge of fraud on the part of the assignor who selects him. *Crane vs. Mitchell,* 1 *Sandf. Ch.,* 251. And so also of

an assignee who was unfit to attend to business by reason of a lingering disease, which fact was known to the assignor. *Carrie vs. Hart.*, 2 *Sandf. Ch.*, 353; *Burrill on Ass'ts*, 62. Both blindness and sickness stand upon the same footing as badges of fraud, with ignorance, and might be rebutted by appropriate facts showing that their existence in the particular case did not disqualify. Yet proof of solvency could in no manner mitigate these defects. The Court properly rejected this offer.

The Defendants had a right of course to reduce the value of the goods taken in order to lessen the recovery against them. They asked the Sheriff and the Deputy how the goods sold at the sale on the execution. This, although by no means conclusive of their value, was one means of ascertaining it. It was known how much they sold for, and if the witnesses testified it was all they were worth, or nearly so, it shed some light upon the question of value. We see no error in the admission of this evidence. Had the Plaintiff recovered a verdict for less than he claimed the goods to be worth, the evidence given by the Defendants on the question of value might have been material on this review, but as the verdict was against the Plaintiff on the question of fraud, the measure of damages loses its significance.

Whether the execution and return offered by the Sheriff in his justification were admitted or rejected, is impossible to decipher from the paper books furnished the Court. The propriety of the evidence offered and admitted, touching the conveyance of certain property by the assignor Cazeau, to the assignee Guerin, shortly before the assignment, claimed to have been upon a secret trust in favor of Cazeau, depends upon the character of the assignment. If it was strictly a partnership assignment, designed to convey nothing but the copartnership property, then the evidence was not admissible. If on the other hand it was a general assignment of all the property of the assignors, both joint and individual, then an abstraction of so large an amount of real estate immediately previous to its execution by one of the assignors for his own benefit, would be a strong circumstance to prove that the assignment was not made in good faith for the benefit of the

creditors. If the first conveyance to Guerin of the land was admissible, all the subsequent changes that the land so conveyed went through, and the considerations moving between the parties, were also admissible to characterize the first, and establish the intent with which it was made, or in other words to show whether there was really a secret trust reserved in favor of the first grantor. The assignment executed by the parties in this case was in the form given by Mr. Burrill in his work on assignments, page 582, appendix, under the head of "Assignments by a co-partnership giving preferences." In the beginning they describe themselves as "Louis Bartlett, Jr., and Firman Cazeau, copartners under the name, style and firm of Bartlett & Cazeau, of the first part." They say they are indebted and desirous of making a fair and equitable distribution of their property and effects among their creditors. They then sell and assign to the party of the second part, his heirs, &c., "all and singular the lands, tenements and hereditaments of the said parties of the first part, situate, lying and being in the Territory of Minnesota, and all the goods, chattels, wares, merchandize, bills, bonds, notes, book accounts, claims, demands, judgments, choses in action, evidences of debt and property of every nature and description of the said parties of the first part, of which said lands and property aforesaid a schedule will be hereto annexed marked 'A,' and also all the books of accounts of the said parties of the first part, and all papers, documents and vouchers relating to their business dealings or property." The assignment then creates a trust for the creditors of the partnership with preferences. Next, the individual creditors. Next, surplus if any to themselves. It is signed and sealed by each of the members of the firm with his own name. There is a schedule of the property intended to be transferred annexed, which enumerates the property specifically, and contains no words of general import indicating that any other than the specific property mentioned was designed to be passed.

It is a general rule in the construction of assignments containing general words of transfer, such as all the debtors' property, that subsequent words of description or a reference to a schedule as setting it forth particularly will operate to

limit the general clause of transfer, and nothing will pass that is not set forth or specified. *Burrill on Ass'ts*, 327, 244-5-6, *and cases there cited*. Nor does any presumption arise from such an assignment that it is a general one. *Id.*, 244-5; *Wilkes vs. Ferris*, 5 *John.*, 335. It was perfectly competent for these partners to make an assignment of their partnership property alone, reserving their individual estates, which would be liable to seizure for their firm debts at any time; or they might have assigned their partnership property, and put into the same instrument portions of their individual property without its being a general assignment or subject to the rules applicable to such instruments. One of the partners did in fact put into the schedule the individual half of the store in Faribault, which was the individual property of Bartlett. We think the assignment was not a general one, but was an assignment of the partners in their associate capacity, and was not to be affected by the acts of the individuals in relation to their separate property.

The Defendants had the right to inquire of the assignee all about the manner he conducted the business under the assignment, as to moneys received, notice given to creditors, &c., if for no other purpose, to test his business capacity in connection with the charge of his ignorance. There was no error in admitting the evidence of this nature. The same is applicable to the witness Demules. He transacted the business for the assignee, and the Defendants might question him concerning all these matters to see whether the assignee had stated them correctly. The assignee was the Plaintiff's witness, and as the enquiries were material he might be contradicted, if not for impeachment, at least to show by his ignorance of the business intrusted to him his incapacity to transact it.

The deed from Bartlett, Jr., to Cummings, Seaman & Co., was properly admitted to show a payment on their debt. If the debt of this firm had been paid in whole or in part, the Defendants had a right to show it, as it is always a badge of fraud to insert debts in the schedule that are not owing by the assignors, and give them a preference.

The Plaintiff offered to prove the value of the property so

conveyed, in order to show that it was worth much less than $2,500, the amount named in the deed. The competency of this proof would depend altogether upon the fact whether the creditors had agreed to receive the land at the stipulated sum of $2,500, or merely took it in part payment to the extent of its real value. The mere fact of the consideration in the deed being stated at $2,500, would not be conclusive that it was agreed to be taken for that sum. The testimony concerning the transaction is very meagre, as presented in the paper books. Mr. Sanborn testified that he had a conversation with one of the firm of Cummings, Seaman & Co., and that he said their claim was about $5,000, and that a payment had been made upon it in real estate of $2,500. The conveyance had not then been received by Cummings, Seaman & Co. The inference to be drawn from this testimony is that it was taken at the agreed amount, as the member of the firm did not speak from the deed, but from some previous arrangement that had been made between the firm and Bartlett, or Bartlett & Cazeau. The testimony was therefore properly rejected.

The Court clearly erred in allowing the witness Dufresne to give the contents of the letter received by witness from Louis Bartlett, Jr., a few days prior to the date of the assignment. No foundation whatever was laid for the admission of secondary evidence of its contents. The witness simply stated that he had not the letter then, and did not know who had it. That he had not seen it since he left Faribault, on the 27th of February, 1857. That the letter was put among the letters pertaining to the business of the store. That as near as he could remember he left it there when he came away, and that he did not know where to look for the letter. It does not appear that the slightest effort had been made to find it, either by search or inquiry. Proof of its contents should, under this state of the proof, have been rejected.

The second, third and fourth requests of the Plaintiff to the Court to charge the jury, were based upon the theory that the assignment was the joint act of the firm, and not a general assignment of all the property of the assignors, and should have been given as requested.

The fifth request was also a correct statement of the law

concerning an assignee who is charged with incompetency by reason of want of education, which we have discussed above.

The charge of the Court given under the sixth request of the Plaintiff was not erroneous, in telling the jury that a fraudulent intent was to be presumed from the appointment of an incompetent assignee, and that the Plaintiff must rebut the presumption, because the whole charge must be taken together and with reference to the facts proved. The Court had previously charged that if the assignors had been informed by the assignee of his want of education and incompetency to execute the trust, and they had appointed him, well knowing all these facts, that it was evidence from which they might find the assignment was executed with intent to hinder and defraud creditors. Taken together, they contain the element from which a fraudulent intention would be inferable, to-wit, a knowledge in the assignors that they were appointing an improper person. The Court would have been less liable to misapprehension had it reiterated that fact in the charge under sixth request of the Plaintiff, but the omission of it was not error.

The ninth request of the Plaintiff was properly corrected by the Court. The employment of the assignors, and their continuance and connection with the business, is always a fact to go to the jury for what it is worth. It may be innocent or not, according to the developments in the case. In this case it was highly proper that it should go to the jury.

The eleventh request was properly refused. The removal of goods from the store by the assignors after the assignment, did not depend wholly upon its being with the consent of the assignee to make it evidence against the assignment. It would be proper upon the question of the competeney of the assignee to protect the trust property, unless perhaps the taking was a larceny.

There should be a new trial of the cause.

[Judge Palmer, of the 2d District, being interested as a party in the cases arising under this assignment, Judge Vanderburg, of the 4th District, presided upon the trial in the Court below.]