KLAUBER, Assignee, vs. CHARLTON.

VOLUNTARY ASSIGNMENTS *for the benefit of creditors: Sureties.*

1. Under the statutes of this state relating to voluntary assignments for the benefit of creditors, sureties upon the assignee's bond are not *responsible* or *sufficient* unless they are freeholders in this state.

2. If the proof made by the sureties, purporting to be made under oath, at the time of the taking of the bond, shows that they were sufficient, within the meaning of the statute, and the proper officer approved of them, the assignment cannot be avoided by contradicting the affidavits of the sureties, nor by proof that the oath was not in fact administered, unless it be shown that the assignment was made for the purpose of hindering, delaying or defrauding creditors.

APPEAL from the Circuit Court for *Dane* County. The case is thus stated by Mr. Justice TAYLOR:

" This is an action of replevin. The plaintiff claims the prop-

erty as the assignee of Bernard Kohner, by virtue of an assignment made under the provisions of chapter 63, R. S. 1858, as amended by chapter 64, Laws of 1858. The defend-. ant, as sheriff of Dane county, claims the goods by virtue of a levy thereon made by him upon two executions issued out of the circuit court of said county upon two judgments rendered in favor of the plaintiff in two separate actions against said Bernard Kohner. The assignment was · executed and delivered, and the assignee took possession of the goods, before the executions were levied. The sheriff having taken possession of the goods by virtue of his levy, the assignee brought this action of replevin to recover the possession thereof.

"This case has been in this court before upon an appeal by the present defendant; and upon that appeal this court held that the bond given by the assignee was sufficient in form, and the assignment was not void on account of any insufficiency in the form of the bond itself. See *Klauber v. Charlton*, 45 Wis., 600.

"Upon a retrial of the case the plaintiff had judgment in the court below; and the defendant appeals and alleges as error that the court below excluded evidence offered on his part for the purpose of showing that Thuringer, one of the sureties on the bond of the assignee, was not 'a freeholder of this state.'

"The evidence on the part of the plaintiff showed that a bond sufficient in form, as this court held upon the former appeal, had been given by the respondent upon the assignment of the property to him; and that Thuringer and Samuel Klauber, the sureties to such bond, had each made the following affidavit:

"'*State of Wisconsin, County of Dane — ss.:*

"'[Name of surety], one of the sureties of the foregoing bond, being duly sworn, says: That he is a resident and freeholder within this state, and that he is worth the sum of —— thousand dollars, over and above all his debts and liabilities,

and exclusive of property exempt by law from execution, in property situate in said state of Wisconsin.

"'[Signed by Surety.]

"'Subscribed and sworn to before me this 4th day of February, A. D. 1878.    "'Alden S. Sanborn,

"'County Judge, Dane county, Wis.'

"On the back of the bond was the following indorsement:

"'I hereby approve of the written bond, and of the sufficiency of the sureties therein.

"'Dated February 4, 1878.

"'Alden S. Sanborn,

"'County Judge of Dane county, Wis.'

"Thuringer justified in the sum of $5,000, and Klauber in the sum of $15,000."

The cause was submitted on the brief of *Vilas & Bryant* for the appellant, and that of *Sloan, Stevens & Morris* for the respondent.

For the appellant it was argued, 1. That the statute in force at the time of the assignment in question, in clear and plain terms, declared such an assignment absolutely void as against creditors, where the assignee's bond was not signed by two or more "freeholders of this state" as sureties; that the statute requires of such sureties, first, that they shall be "sufficient," and then, *as an additional qualification*, that they shall be freeholders of this state; that it does not require the surety to state in his affidavit the fact that he is such a freeholder, nor does it require the officer to know that fact, or commit to him any judgment upon it; that it prescribes distinctly two qualifications for a lawful surety: first, a simple *matter of fact*, that he is a freeholder of this state; second, that he shall, by his affidavit, testify to his pecuniary responsibility, and satisfy the officer that his property, being within this state, is worth, with that of the other sureties, the sum specified in the bond. The latter qualification involves matter of judgment upon the value of property, and is complete when the favorable opinion

of the officer is secured upon the prescribed proof.    The former qualification involves no opinion; it must be true in fact; and hence it is neither necessary for the surety to swear to it then, nor for the officer to pass any opinion upon it. The fact that the surety was such a freeholder must-be established when the validity of the assignment is drawn in question; and it is enough that it is *then* established.   No argument against this can be derived from the requirement that the sureties " shall each testify as to his responsibility." The word " responsibility " relates only to the surety's possession of sufficient property liable to the payment of his debts, and is fully satisfied by personal estate; while, on the other hand, the ownership of a homestead would make him a freeholder, but add nothing to his legal responsibility. (Compare, on this word, R. S., sec. 2771.)   And the words which immediately follow the word " responsibility," show that the latter word is used in the sense above defined.   Nothing is required of the officer but to express his satisfaction that the property of the sureties is *worth in the aggregate* the sum specified in the bond. Counsel further argued that the statute was a remedial one, designed to protect creditors from the flagrant abuses previously existing under the common law; and that it should be construed liberally, and full effect given to it, for that purpose. *Churchill v. Whipple*, 41 Wis., 611; *Smith v. McCulloch*, 42 id., 564; *Hardmann v. Bowen*, 39 N. Y., 196; *Britton v. Lorenz*, 45 id., 51; *Fairchild v. Gwynne*, 16 Abb. Pr., 23. 2. That in this case the appellant offered to show, not only that the surety was not a freeholder of this state, but that he did not in fact testify by his affidavit that he was a freeholder; that when he signed what purported to be the affidavit, he did not know that it contained a statement that he was a freeholder; and that he was not sworn to it in any manner by the officer. If he had been a freeholder in fact, the objection that he was not formally sworn might savor of technicality.   But when it appears that this essential qualification was wanting; that no

affidavit or testimony as to its existence was given; and that he unwittingly signed his name to a false statement, prepared by others for him to sign, by which the county judge was deceived into action which he was not authorized to take — how can it be held that third parties, not participating, can be cheated of their security, and the provisions of the law thus defeated?

For the respondent it was argued, that, by the statute in force at the time, the whole matter of the responsibility of the sureties was intended to be submitted to the decision of the officer taking the bond; that all the elements which are made necessary to qualify a person to become a surety, constitute his "responsibility;" that the statute requires evidence to be produced before the officer that all these elements exist, to enable him to decide whether the sureties offered are responsible; and that the decision of the officer is conclusive. *Anon.*, Lofft, 145; *Churchill v. Whipple*, 41 Wis., 615. It was further argued that the affidavits in these cases, like those on which attachments are issued, and those on which defendants are held to bail, are conclusive. *Conklin v. Dutcher*, 5 How. Pr., 387, and cases there cited.

TAYLOR, J. The only question arising upon this appeal is, whether it was competent for the defendant to show that one or both of the sureties were not in fact freeholders within this state at the time of signing the bond, for the purpose of avoiding the assignment under the statute.

The statute above cited declares that the assignment shall be void as to the creditors of the assignee, unless, among other things, a bond shall be given " in such sum not less than the whole amount of the nominal value of the assets of such assignor, which value shall be ascertained by the oath of one or more witnesses and of the assignor, with two or more sufficient sureties, freeholders of this state, who shall each testify as to his responsibility, and by their several affidavits satisfy

the officer taking such bond that the property of such sureties, being within this state, is worth in the aggregate the sum specified therein."

Previous to the enactment of this statute, it was competent for a debtor to make an assignment of his property to any person of his choice for the benefit of his creditors, without requiring such assignee to give any security for the faithful performance of the trust reposed in him; and his creditors would be bound by such assignment, in the absence of fraud. The fitness or unfitness of the assignee to discharge the trust could not be inquired into in a collateral action by a creditor, except for the purpose of showing the fraudulent intent of the assignor in making the assignment. Bump on Fraudulent Conveyances, 367, 368; Burrill on Assignments, § 92; *Angell v. Rosenbury*, 12 Mich., 241, 255, 256; *Guerin v. Hunt*, 6 Minn., 375; *Cram v. Mitchell*, 1 Sandf. Ch., 251; *Currie v. Hart*, 2 Sandf. Ch., 353.

The statute above cited was passed for the purpose of compelling assignees to give security for the faithful performance of their duties as such, and thereby afford some assurance to the creditors that the property assigned would be faithfully administered for their benefit; and it declared all assignments absolutely void which were not made to some resident of this state, and where the assignee did not give the bond required by such act. The statute provides that the amount of the penalty of the bond shall be fixed by the oath of two witnesses and that of the assignor, swearing to the nominal value of the assets, and that the sureties to the bond shall testify as to their responsibility, and by their several affidavits satisfy the officer taking the bond that the property of such sureties, being within this state, is worth in the aggregate the penalty of the bond. It will be observed that the whole proceeding is *ex parte* in its nature, as no notice is required to be given to any person interested; but the method of doing the same is particularly prescribed by the statute, so far as the penalty of

the bond and the sufficiency of the sureties are concerned; and the statute having provided no method of reviewing these proceedings, they are, when made as the statute directs, conclusive upon all parties interested, unless impeached for fraud.

This court has substantially held, in the case of *Hutchinson v. Brown*, 33 Wis., 465, that the statutory method of fixing the penalty of the bond must be followed, and that when it is so fixed it cannot be impeached in a collateral action, because it was not in fact given for either the real or nominal value of the assets. The method prescribed by statute having been in fact substantially complied with, it must stand until set aside for fraud or other sufficient cause, in an action brought for that special purpose, in which all parties having an interest can be heard; and in the case of *Churchill v. Whipple*, 41 Wis., 611, it is expressly held that the pecuniary ability of the sureties must be ascertained in the way pointed out by the statute, and cannot be ascertained in any other way. It was held that, because the affidavit of the sureties did not show that they were worth the required amount in property within this state, the bond was void, and that it could not be validated by showing that fact in any way or manner other than by their affidavits, made before or delivered to the officer at the time of his reception of the bond. Justice LYON, who delivered the opinion in that case, says: "Notwithstanding the very ingenious argument of the learned counsel for the plaintiff in support of the opposite view, it seems very clear to our minds that the statute requires such fact to be shown by the affidavits of the sureties, and that in no other way can it be made to appear that they have the requisite property in this state. The plain meaning of the statute is, that the assignment shall be void unless the sureties shall satisfy the officer taking the bond that they have the requisite property in this state, and that this can only be done by the affidavits of the sureties themselves."

Like the preliminary affidavit which the statute requires

to be made before an attachment against the property of a debtor shall issue, it must conform to the requirements of the statute, and unless it so conforms the attachment is void, and no amount of other evidence of the fact required to be stated in such affidavit can be substituted therefor. And when the affidavit conforms to the statutory requirements, no amount of testimony can impeach it, unless the statute provides that it may be impeached and points out the manner of impeaching the same.

The only question, therefore, under the decisions of this court, is whether it is the duty of the officer by whom the bond is taken to inquire as to the qualification of the sureties, as well as to their pecuniary responsibility. The only qualification of the sureties, other than that they have the necessary property in this state, is that. they shall be freeholders of this state.

Taking all the provisions of the statute together, we are of the opinion that it was the intention of the legislature to submit to the officer to whom the bond is to be given, all questions as to the qualifications as well as the pecuniary responsibility of the sureties; and that when such officer certifies his approval of the sureties, and the affidavits as to the value of the assets and the responsibility of the sureties are made as required by the statute, and the bond is in the form and for the penalty prescribed and fixed by the proper affidavits, it is conclusive upon all parties interested in every collateral action, unless it be shown by the creditor attacking the assignment that it was made for the purpose of hindering, delaying or defrauding the creditors of the assignor, within the meaning of section 2320, R. S. 1878.

The statute provides that the sureties shall be "freeholders of this state, who shall each testify as to his responsibility, and by their several affidavits satisfy the officer," etc. This language, though not the most clear and unambiguous, yet, when taken in connection with the whole object of the statute,

seems to us to indicate that the sureties must testify under oath to all the facts necessary to show that they are not only responsible in a pecuniary point of view, but that they have the qualifications which the statute requires, viz., that they are freeholders of the state. The fact of their being freeholders is made by the statute an essential part of their responsibility. They might each be worth ten times the sum required in property within this state, yet, if they were not " freeholders of this state," they would not be sufficient and responsible sureties within the meaning of the statute. If the proof made by the sureties at the time of taking the bond shows that they are sufficient within the meaning of the statute, and the officer approves of them, the assignment cannot be avoided by contradicting the affidavits made by the sureties, unless the proofs go to the extent of showing that the assignee knew that the sureties were not freeholders, or corruptly or fraudulently procured the making of such affidavit. Such evidence would attack the *bona fides* of the assignment, and could undoubtedly be received.

Nor can the assignment be avoided by showing that the affidavits of the sureties, which are certified to have been sworn to, were not in fact sworn to, except, perhaps, when such evidence is offered in connection with other evidence for the purpose of showing the fraudulent nature of the assignment. See *Rex v. Smith & Hornage*, 1 Stark., 242; *Rex v. Rivers*, 7 C. & P., 177; *Reg. v. Pikesley*, 9 C. & P., 124; *Eastman v. Bennett*, 6 Wis., 232–243; *Frederick v. Clark*, 5 Wis., 191; *Carr v. Bank*, 16 Wis., 50. As the evidence offered in this case was offered solely for the purpose of showing that the assignment was void as not being in compliance with said chapter 63, we think it was properly excluded.

The general rule is, that when an oath is required to be made before an officer, whose duty it is to certify such oath, such oath can only be proved by the production of the proper written evidence, and when produced is conclusive evidence of

the facts therein stated, except, perhaps, in a direct proceeding to set the same aside, or when it has been fraudulently made (1 Wharton on Criminal Law, § 659; 1 Greenleaf on Evidence, § 86; *Bassett v. Marshall*, 9 Mass., 312; *Tripp v. Garey*, 7 Greenl. (Me.), 266; *Dole v. Allen*, 4 Greenl., 527; *Harris v. Whitcomb*, 4 Gray, 433); and the same rule is approved by this court in *Lederer v. Railroad Co.*, 38 Wis., 244, and *Wright v. Fallon, ante*, p. 488.

In the latter case this court held, that because the affidavit for an appeal from a justice's judgment was not signed by the appellant or any one in his behalf, though certified by the justice to have been sworn to, it was not sufficient to give the appellate court jurisdiction, and that the defect could not be supplied by parol evidence; and in the case of *Lederer v. Railroad Co.*, where a similar affidavit was not signed by the officer administering the oath, the court allowed the same to be perfected, upon proof that the oath was in fact administered, by allowing the officer who had administered the same to sign his name to the *jurat* as of the day it was made. Both cases clearly recognize the rule, that when the law requires an oath to be in writing and certified, no proof of the oath can be given, except by the production of the writing itself, properly certified, unless the same, having once existed in writing, has been destroyed or lost.

*By the Court.*— The judgment of the circuit court is affirmed.