## STRATTON *v.* THOMPSON and TRIBBLE.

1. CONSTRUCTION OF DEED OF TRUST. A deed of assignment which expresses a desire to indemnify and save harmless certain named endorsers and securities, and then proceeds to specify the debts upon which they are endorsers and securities, together with others upon which they were not endorsers or securities, and constitutes these two, the first class, and concludes with this: "The debts above *enumerated* are preferred, and are to be paid by the trustees out of the proceeds of said property *in the order they are mentioned and set forth.*" And then creates a second class by specifically naming some of the creditors, and concludes with the following: "If there are other debts not mentioned, they are to be paid by the said trustees equally and ratably out of the proceeds of the property above mentioned *after* the payment of the debts specified in the first class." Construed not to let in with the creditors of the first class, two debts endorsed by the two endorsers named and not specifically mentioned.

2. SAME. A general desire on the part of a contracting party is of no avail in a contract unless it be made a part thereof and falls under some one of the contractual, directing and practical clauses of the written contract, and clearly it will not be considered in a case in which the terms of the deed, in its specific clauses, ignores it.

3. TRUSTEES MAY RETAIN. Trustees, under a deed of trust, will be permitted to retain of the trust fund a sufficient amount to pay any judgment which may be obtained in an attachment suit commenced before making of the deed of trust, and will not be charged interest on the same or any part thereof, which was held for a reasonable time for this purpose. If the trustees realized interest on any part of the sum thus retained, either directly or indirectly, they will be charged like interest.

### FROM WILSON.

Appeal from the Chancery Court at Lebanon. W. F. COOPER, Ch.

JORDAN STOKES for trustees.

TARVER & GOLLADAY for second class creditors.

EAST, Sp. J., delivered the opinion of the court.

On the 30th day of May, 1865, Haynie Thompson and Son, Samuel P. Thompson, executed a deed of trust for the benefit of creditors to Peter Tribble and Matt. N. Thompson, trustees, which deed was duly registered and the trustees accepted the trusts, and entered upon the discharge of the duties imposed upon them. The property conveyed consisted of real estate, personal property, and choses in action; composed of farm lands, live stock of all kinds, wagons, buggies, household and kitchen furniture, corn, bacon, and provender, judgments and notes, etc. The deed contains the usual covenants of title which is followed by a clause as follows: "But this assignment or deed of trust is made for the following purposes, that is to say, we are indebted to divers persons, and the said

Peter Tribble and M. N. Thompson are liable and bound for us as our sureties and accommodation endorsers, and we are desirous to indemnify and save them harmless as such. We are indebted to John Organ, administrator of Fanny Billing, in the sum of $1,900, upon which they are securities, and upon which judgments was rendered against us and others at the May term of Wilson circuit court, 1865. Also, to Pointer & Co., in the sum of $1,400, now in judgments against us." And the deed then proceeds to mention specifically various debts owing by the assignors, upon all of which one or both of the trustees are endorsers or securities, and thereon it specifies other debts which, upon the face of the deed, it is not shown who, if any one, is the endorser or security. The foregoing constituted the first class. At the end of this enumeration is the following clause: "The debts above *enumerated* are preferred, and are to be paid by the trustees out of the proceeds of said property *in the order they are mentioned and set forth.*"

The deed then proceeds: "We are indebted to other creditors, to-wit," here naming several, and concludes with this clause: "And if there are other debts not mentioned, they are to be paid by the said trustees equally and ratably, out of the proceeds of the property above mentioned *after* the payment of the debts *specified* in the first class." If the debts mentioned were not paid by the 1st of October, 1866, then the trustees were to proceed to sell the property at public auction. The trustees were empowered to sell the personal property

as they might deem best, either privately or publicly, looking to the rights and interests of all parties interested, and apply the proceeds to the satisfaction of the judgments of Organ and Pointer & Co.

The trustees were also to fatten the hogs with the corn now on hand, ready for the fall market; and also to put in order such other stock as they deem advisable for market, and do all other things that will promote the interest of all creditors.

The trustees realized $34,995.32 from sales and otherwise. The creditors of the second class, on the 4th of September, 1873, filed their bill against the trustees for discovery and account, which was answered. And on the 20th day of October, 1874, the trustees filed a cross-bill to have the deed reformed, so as to have a debt owing the Bank of Tennessee for $4,000, due November 23, 1861, upon which both trustees were endorsers, and one due Hearn for $200 due March 1, 1860, with a credit of March 2, 1860, for $75, upon which as endorser or surety was the trustee, Thompson, declared to belong to the first class, and that they be permitted to pay them, as such.

The chancellor dismissed the cross-bill, construed the deed of trust, and held that neither the debt due the Bank of Tennessee or the one due Hearn belonged to the first class, but should be reckoned among the debts secured in the second class.

The trustees, it seems, had paid the debt of the Bank of Tennessee, paying therefor $1,841,72; they had also paid the balance of the debt of Hearn of $192.50.

Of the lands conveyed in the trust deed, by the makers thereof, who were father and son, was one tract which had been deeded ·to the father, Haynie Thompson, several years before, by his children, viz, Samuel R. Thompson, joint assignor, Matt. N. Thompson, another son and trustee, and the wife of the other trustee, Peter Tribble. This land, when sold by the trustees, had brought some $6,750. The trustees allowed Mrs. Tribble to take of the purchase money $2,250 because her husband had never joined in the deed to her father. By a consent decree entered in this cause, her right to this money has been relegated to a proceeding now pending in the chancery court wherein she is complainant, and no opinion is called for, or expressed herein relative to the same. The trustee, Matt. N. Thompson, also retained one-third of this money, for the reason that he had received no consideration for his conveyance of the land to his father, and for other reasons. He submitted to the court the question of his right to retain it. The chancellor charged him with this, as a part of the trust fund, but did not charge him with interest because it appeared that at the time the land was assigned there were attachments levied upon it, and these suits were pending until about the time this bill was filed, or later. The chancellor allowed the trustees compensation of five per cent on the amount collected and disbursed, and they insist, under the proof, that they should have been allowed a greater compensation.

This brings up for the decision of this court the following questions:

1st. Did the chancellor commit error in refusing the prayer of the cross-bill to reform the deed?

2d. Upon a fair construction of the deed of trust do the debts of the Bank of Tennesse and Hearn take position in the preferred class?

3d. Should the trustees have been charged interest upon the trust funds not disbursed?

4th. Should the trustees be allowed, in view of the fact, as they claim, that they have increased by their management the trust fund, a greater compensation than five per cent?

At the time the cross-bill was filed to reform the deed Haynie Thompson was dead, and several of the other parties have died pending the litigation.

We do not understand that it is seriously insisted upon that the chancellor under the proof, and. after the lapse of time before filing of the cross-bill, committed an error in refusing the relief prayed for therein.

The argument of the solicitor for the trustees . is directed mainly to the construction of the deed of trust, insisting that it indicates a general intention to indemnify the trustees as endorsers and securities; and that the general intent is not to be limited and restricted, to the debts subsequently enumerated, and therefore, the debts of the Bank of Tennessee and Hearn were properly paid, as belonging to the first class. This is denied by the creditors of the second class, who insist that the payment of these debts by the trustees was wrong, and they should be charged with the money they have paid thereon with interest. No case has been cited on either side bearing directly

Stratton *v.* Thompson and Tribble.

upon the question, but authorities have been cited in the argument, which it is claimed, furnish, by analogy, the solution of the question of the proper construction of the language of the deed. These cases cited have arisen upon deeds of assignment, in which the assignors have conveyed, by general language, their property, and have also referred to an accompanying schedule as containing a full description of the same; and the question presented to the courts, was, whether property which might fall under the general description, passed to the trustees, though not mentioned in the schedule. In the case of *Guerin* v. *Hunt*, 6 Minn., 375, speaking to the question now under consideration, the court said: "It is a general rule in the construction of assignments containing general words of transfer, such as all the debtor's property, that subsequent words of description, as a reference to a schedule, setting it forth particularly, will operate to limit the general clause of transfer, and nothing will pass that is not set forth as specified," citing Burrell on Assignment, 327, 244–5, and *Wilks* v. *Ferris*, 6 Joh., 335. In *Scott* v: *Coleman*, 5 Litt. (Ky.), 349, the language of the deed was expressed in these comprehensive words: "All the estate, real, personal and mixed, to which they (the grantors), were entitled either in law or equity within this State, Kentucky. the State of Ohio, at New Orleans or elsewhere; whether held jointly, severally or in common." These expressions immediately follow: "The situation, quantity, *quality*, amount and species of which said estate is more at large and fully explained by a schedule

thereof annexed to this indenture and intended to be recorded herewith."

The court said: "To the schedule then we must look for what is, or is not embraced in the deed, and we do not conceive that anything more is included than what the schedule contains." In *Ely* v. *Clapp*, 16 B. Monroe, 230, the language of the assignment was: "All the goods, wares and merchandise, and property of every name and nature, whatever, of and belonging to the said party of the first part, which will be more fully set forth in an inventory which will be taken hereafter, and in which the property will be described."

The court said: "The deed conveys all the property of every description which belonged to the grantor. The language is broad and comprehensive and cannot be construed to limit the operation of the deed to such property as should be described in the inventory referred to. The office of the inventory was to describe the particular articles which constituted the property that had been conveyed by the deed. Its failure to contain a full and true description of said property, could not diminish the legal effect of the conveyance."

To the same effect are the cases cited in 17 N. Y., 478, and 40 N. Y., 471. In the last named case the assignee conveyed the "lands, tenements, and hereditaments, situate, etc., and all goods, chattels, merchandise, etc., bills, bonds, notes, accounts, claims, and all property of any name and nature whatever, etc., more particularly enumerated and described in a sched-

ule hereto annexed." All the property mentioned in the schedule were two pieces of land and a list of the debts owing to the assignors. The words "goods and chattels and merchandise," used in the general language would have no meaning or signification, and no application to any property mentioned in the schedule;" hence the court held that this property passed by the deed.

In view of all the cases cited, and such others as have come under the observation of the court, incline the court not to regard these cases as furnishing an analogy for the solution of the present question. To determine what is the effect of the language of a deed as to the property described generally as regards the property mentioned in, or omitted from the schedule referred to in the deed, is one thing, while the question here is another; and we cannot accept the rule of construction as embodied by the one as furnishing a safe rule for the other, even were the authorities on this subject less discordant than they are.

In cases where the question was what property passed to the trustees, the courts have been led to the consideration of such questions as:

1st. Whether the debtor was making a general assignment of all his property, or only a partial assignment. If the former, the deed was to be construed under the light of that material circumstance.

2d. In many States the statutes call for a schedule of the property and require it to be filed: Burrell on Assignments, 278. In other cases the courts have been compelled to ascertain whether the schedule was

referred to in the deed by the grantor in such a way as to indicate that *it* contained a description of the property intended to be conveyed, rather than the deed, or *vice versa.*

In this case the trouble does not arise as regards the property conveyed, as in the cases cited. In this case there is no independent schedule of the debts called for in the deed, nor was it required that there should be. The better rule in all cases is to read the whole instrument and give effect to every part if possible, and thereby reach its true meaning, and not resort to artificial or arbitrary rules until the former rule is exhausted.

Let us proceed to test the writing by this rule. That the assignors desired to secure their near relatives and friends, in every respect, and to fully indemnify them against loss, we have no doubt, the question is, have they expressed this desire in such way, as to make it a part of the conveyance? However much they may have desired to do the thing, yet if in fact they failed to carry out the desire, by reason of inattention to the business on hand, or a failure to recall the debts upon which these parties were endorsers or sureties, for omissions of this character, the court could not make amends, by construction, and now do for them these things, which by reason of ignorance, neglect, or failure of memory, they omitted to do for themselves, *quod scriptum est, est scriptum.* Does the deed, either generally or specially, place these two debts in the preferred class? That it does not do so specifically, is admitted. Does

it do so by the general language? "But this assignment or trust deed is made for the following trusts and purposes, that is to say, we are indebted to divers persons, and the said Tribble and Thompson are liable and bound for us, as our sureties and accommodation endorsers, and we are desirous to indemnify and save them harmless as such." Indemnity to these parties is the primary desire of the grantors. How far did they carry out that desire? They enumerated a large number of debts upon which these parties were endorsers and sureties, but stopped short of full indemnity by two debts; they evidently thought they had named all, no more was remembered at the time. They did not insert a provision in this clause of the deed as in the second, providing against the failure of memory, as follows, "and if there are other debts not mentioned, etc." They evidently concluded that they had mentioned all. After making the preferred class they say, "the debts above *enumerated* are preferred and are to be paid by the trustees, etc., in the order they are mentioned and set forth. Debts "enumerated, mentioned and set forth," are the debts to be paid first. Neither of these debts are "enumerated, mentioned and set forth," in the sense of the deed. Had they been in the mind of the grantors when the deed was executed, they would doubtless have been enumerated, as were those in the same condition which were remembered. Here is a deed containing a reference to debts in the most general way, and by the side of this general reference is mentioned specifically other debts, which fell under the general ref-

erence and debts which do not fall under the general reference; and this is followed by a clause directing the trustees to pay out the trust money upon the debts in the order in which they are "enumerated, mentioned and set forth;" that is, the first debt mentioned is to be first paid, and so on to the last, paying each in the order in which it is mentioned. At what point would the trustee be allowed to pay these two debts if there was not sufficient funds to pay all? Would he be justified in paying them and thereby omit debts specifically enumerated? However much the court may feel inclined to carry out the desires of parties to written contract, it would not do so in the face of particular expression in the contract which forbid it.

We have said, that we have no doubt that the grantors did desire to indemnify these surities and endorsers, but a latent desire is of no avail in a contract unless it be made a part thereof and falls under some one of the contractual, directing and practical clauses.

If it be said that the general clause of indemnity to the sureties and endorser is sufficient to create the preference by implication as in the case of *Miller* v. *Holcombe,* 9 Gratton, 665, the court might reply, that the language of the deed in that case justified the decision because there was no restriction or limitation of the general clause, by the subsequent clauses of the deed, as in this, but a continual enlargement. Here the court is not at liberty to make implications from the general language, and declare that the gen-

Stratton *v*. Thompson and Tribble.

eral intent is not qualified.   The later words of the deed directing the trustees to pay out the money upon the debts in the order in which they are "enumerated, mentioned and set forth," could not possibly refer to the general clause, for the reason that in it no debt was "*enumerated, mentioned or set forth,*" but must be held to apply to the debts which were specifically enumerated.

It is insisted that the trustees should be charged interest on so much of the trust fund as they used in paying the debts of the Bank of Tennessee and Hearn, and which Thompson retained, making together about $4,000.   On the other hand, it is claimed that this should not be done for two reasons:

1st.   That the pending attachment suits justified them in retaining sufficient amounts to defray the expenses of defending these, and to pay them in the event they were lost.   The sums involved in these suits are about $4,000.

2d.   The payment of the debts of the Bank of Tennessee and Hearn involved an innocent mistake in judgment about a matter concerning which judges and lawyers might reasonably entertain different opinions.

The court concedes the justice of the former position and holds that it was the duty of the trustee to protect the property conveyed to them, by defending the suits and to retain sufficient of the trust fund to meet any debt which might be put upon the land, but do not concede the soundness of the latter in waiting until they were sued, instead of filing a bill to have the trust deed construed.

16—VOL. 10.

But it appears the trustees did use sufficient of the trust funds to pay the Bank and Hearn debts, and thereby stopped the accruing interest on these debts, which they as endorsers or sureties would have to pay, in other words, they invested these amounts for their own benefit, borrowing it of themselves as trustees, and with the sum thus borrowed they paid debts upon which one or both were liable personally. They should have been charged interest on these sums thus invested.

Without discussing, at length, the power of the court to allow a larger compensation than five per cent to trustees, or indicating in what class of cases it would be proper, we are content to hold that the relation of the trustees in this case to the fund, their personal interest in it would preclude the court from increasing the allowance beyond the sum already allowed by the chancellor. Subject to the modification herein ordered, the decree of the chancellor will be affirmed, and the defendant will pay the costs.