## HORNE *v.* ROGERS.

</div>

1. One who bought land, paid a part of the purchase-money, gave a promissory note for the balance, and took a bond for titles, with knowledge of an existing incumbrance on the property, and who subsequently entered into an agreement with the vendor, recognizing liability on the note and, in effect, renewing the promise to pay therein contained, upon the vendor's removing the incumbrance, could not defeat a recovery upon the note when on the trial of an action thereon brought by the vendor it affirmatively appeared that the latter had complied with the terms of the agreement and could and would on the payment of the note have made the defendant a good title.

2. It was not, on the trial of such an action, a fact material to the case that the land declined in value after the note for the purchase-money had matured. Nor that ordinarily property under incumbrance was not marketable.

3. Nor was it good matter of defense that the defendant had never been placed in possession of the premises, it not appearing that he had ever desired possession, and it being shown that he could at any time have obtained possession on demand therefor.

4. The amendment to the petition offered by plaintiff pending the trial was subject to several of the objections set up in the special demurrer thereto, and was properly disallowed.

5. The absence of the judge from the court-room for a brief space of time while the trial is in progress will not, in a case where the evidence demanded the verdict as rendered, be, in the light of the former rulings of this court, a sufficient reason to reverse the judgment, when such absence was known to counsel, and there was no request to suspend the trial, no objection to the absence, and no motion for a mistrial upon the judge's return. The rulings made in *O'Shields* v. *State*, 81 *Ga.* 301, and *Pritchett* v. *State*, 92 *Ga.* 65, criticised and disapproved; but, in the absence of an application to review the same, they are followed in the present case.

6. The rulings on evidence were free from error; the charge, taken as a whole, fairly and properly submitted the case to the jury; the evidence demanded the verdict as rendered, and the court did not err in refusing to grant a new trial.

<center>Argued March 7, — Decided April 5, 1900.</center>

Action on contract. Before Judge Felton. Bibb superior court. April term, 1899.

*Hugh V. Washington,* for plaintiff.

*Minter Wimberly* and *Hardeman, Davis & Turner,* for defendant.

COBB, J. On March 24, 1894, Horne brought suit against Rogers, making allegations which were, in substance, as follows: On May 4, 1892, plaintiff paid to defendant $400, and delivered to him notes for $350 and $750, due respectively on May 30, 1892, and May 4, 1893; and defendant delivered to plaintiff a bond conditioned to make title to a one-half interest in a described lot of land upon the payment of the notes. Plaintiff was fraudulently induced to contract for the land, by the representations of defendant that the $400 cash and the amount of the $350 note would be used to obtain a favorable settlement of a purchase-money claim on the land which was due one Carstarphen. Plaintiff did not know what the character or the amount of the claim of Carstarphen was, and paid the note upon the assurance that the two amounts above referred to would satisfy the Carstarphen claim and would be used for that purpose. Plaintiff has since discovered that the claim of Carstarphen was secured by a mortgage upon the land, and that defendant failed and refused to apply any part of the money paid by plaintiff to the satisfaction of the same. Carstarphen instituted proceedings to foreclose the mortgage, which were pending on May

4, 1893, and for this reason plaintiff has refused to pay the note due on that date.  By reason of defendant's failure to pay off the mortgage and make to plaintiff an unencumbered title, he was prevented from making a sale of the property, and sustained a loss thereby of $500, which would have been the profits arising from such sale.  Damages are laid at $750 and interest and $500, and judgment is prayed accordingly.  The defendant in his answer admitted that the contract for sale had been entered into, that plaintiff had paid the $750, and that Carstarphen had a mortgage on the land; but denied the other allegations.  Defendant alleged that plaintiff well knew at the date of the contract that the mortgage was in existence and was a valid lien on the property; that defendant has always been ready to pay whatever amount was due Carstarphen, but there was a dispute about the matter; that plaintiff knew this, as well as that there was a suit pending to foreclose the mortgage, and was familiar with what constituted the defense to that suit; that defendant, in order to protect plaintiff and others who had purchased lots from him, on August 11, 1892, made a written agreement with plaintiff, providing that defendant should deliver to two named persons the note of plaintiff due May 4, 1893, and two notes by other parties, and the proceeds of certain sales of land should be also turned over to these parties, all to be held until the termination of the suit between defendant and Carstarphen, when so much of them as was necessary should be applied to the satisfaction of the judgment obtained by Carstarphen; that in consideration of this action of the defendant, plaintiff agreed not to bring any suit for the purpose of cancelling the note due May 4, 1893, or recover back the $750 already paid, but reserved the right to bring action on the bond for titles in the event defendant failed to pay whatever judgment was recovered in the suit brought by Carstarphen; that plaintiff has never paid or tendered the balance due on the purchase-price of the land, and defendant is and has ever been ready to make to plaintiff good and sufficient titles to the land according to the terms of the bond, upon the payment of the purchase-price.  Defendant prayed judgment against the plaintiff for the amount due on the note which matured May 4, 1893.

By an amendment plaintiff alleged, that the agreement of August 11, 1892, was entered into in consequence of certain false and fraudulent statements in reference to the matter of the controversy between defendant and Carstarphen as well as in reference to a plan which defendant had by which the property could be sold and a profit realized by plaintiff; that defendant purposely delayed the trial of the foreclosure suit until May 14, 1896, when a judgment was rendered for the full amount claimed, which defendant threatened to further resist; that as the notes deposited under the agreement of August 11, 1892, have not been paid, the consideration of that agreement has entirely failed; and that defendant is insolvent. Plaintiff offers to surrender the bond for titles, and prays for a cancellation of the note due May 4, 1893, for $750, for a judgment against defendant for attorney's fees on account of bad faith, and for general relief. Defendant amended his answer by alleging that the note of plaintiff due May 4, 1893, contained an agreement to pay attorney's fees; that the judgment in favor of Carstarphen has been all paid, except an amount equal to the sum due on the note of plaintiff; that Carstarphen has agreed that upon the payment of the note to defendant the mortgage execution shall be marked satisfied; and defendant tenders to plaintiff a warranty deed to the land embraced in the bond for titles, and a cancellation of the Carstarphen mortgage, whenever plaintiff will pay the note due May 4, 1893. The prayer of the amendment was for a judgment against plaintiff for $750, besides interest and attorney's fees, and that upon payment of this judgment defendant make title free of all incumbrances to plaintiff to the property described in the bond for titles. When the case came on for trial the jury returned a verdict in favor of defendant against plaintiff for $750, with interest and attorney's fees; and upon this verdict the court entered a decree that defendant recover of plaintiff the sum mentioned in the verdict, and that, upon defendant's filing with the clerk a good and sufficient warranty deed to the property described in the bond for titles, execution issue on the judgment, and that upon payment of the judgment the title vest in plaintiff. The plaintiff made a motion for a new trial upon numerous grounds, which was

overruled. The case is here upon a bill of exceptions sued out by the plaintiff, assigning error upon the judgment overruling the motion for a new trial, and upon a ruling in which an amendment by plaintiff was disallowed, which was the subject of exceptions pendente lite.

1. The evidence demanded a finding that plaintiff knew when he made the contract of purchase that there was an incumbrance upon the land. While he testified that he "did not know there was· a mortgage on the property· at the time of the trade," he admitted that he "knew from what Rogers said that there was a balance due Carstarphen, and that there was an incumbrance of some kind on it, and Rogers desired the money from [plaintiff] to remove the incumbrance." The evidence also demanded a finding that defendant had complied with the contract of August 11, 1892, and discharged his liability to Carstarphen, so that upon the payment by plaintiff of the note due by him defendant would be able to convey the property to him free from incumbrance. Plaintiff admitted that he had never paid or tendered to defendant the amount due on his note which matured on May 4, 1893, but that on the contrary he had refused to pay the same at maturity and had steadfastly persisted in that refusal. The evidence did not authorize a finding either that the original contract of purchase or the contract of August 11, 1892, was induced by fraud perpetrated by the defendant upon the plaintiff. Such being the case, the jury could not have done otherwise than to return a verdict refusing the plaintiff's prayer for rescission and finding for the defendant on his answer in the nature of a cross-bill praying for judgment on the note due May 4, 1893.

2. There was no error in refusing to permit the plaintiff to prove that the land declined in value after the time that the note for the purchase-money matured. The plaintiff having neither paid the note nor tendered the amount of the purchase-money at its maturity and demanded a title on that day, the subsequent decline in value was wholly immaterial to the present investigation. In the light of the fact that plaintiff knew at the time of the purchase that the property was incumbered, the fact that property with an incumbrance on it was ordinarily not marketable was likewise immaterial.

3. The failure of the vendee under a bond for titles to obtain possession of the bargained premises will not constitute a defense to a suit on the note for the purchase-money, when it appeared not only that he never desired possession but also that he could have obtained possession at any time on demand.

4. During the progress of the trial the plaintiff offered an amendment which the court refused to allow. This amendment alleged, in substance, that he was induced to make the contract of August 11, 1892, by reason of the statement that certain notes were to be turned over to the persons named therein, "to be by them deposited in the Union Savings Bank of Macon, Georgia," and that the same were unconditional notes which would be paid at maturity, and plaintiff had been informed by the officer of the bank that the notes were not in the possession of the bank; that, after the contract above referred to "was executed, he was told by the maker of one or more of said notes, viz. S. B. Barfield, that they were conditional notes, by the terms of which, in certain contingencies, he was to be released from the payment of one half of the amount of the purchase-money as represented by said notes, and petitioner was also informed by said Dr. Barfield that said contingency had arisen, and that he, Barfield, had been released from one half of his purchase-money by the defendant Rogers; that in truth and fact said notes were conditional notes; that this was also a verbal agreement between H. L. Barfield and Rogers, wholly unknown to plaintiff Horne at the time of making the second contract; that said notes were never paid by reason of said condition, unknown to plaintiff at the time of making the second contract of August 11, 1892;" that the failure of the defendant to deposit the notes in the bank above referred to was such a violation of the agreement as to authorize a rescission, and that the representations of defendant that the notes were unconditional was a fraud upon plaintiff, in that if he had known that the notes were conditional he would not have entered into the contract; that plaintiff has never been in possession nor received any rents from the property, the possession and control of the property having been at all times either in defendant or Carstarphen. The court sustained a special demurrer to the

amendment and refused to allow the same.    We see no error in
this ruling.    It not being alleged that the failure of the plain-
tiff to obtain possession was due to the fault of defendant or that
he ever demanded possession, the mere fact that he had never
been in possession would not be a sufficient reason for a refusal
to pay the purchase-money notes.    There being no stipulation
in the contract of August 11, 1892, that the notes therein re-
ferred to were to be deposited with the bank referred to in the
amendment, and there being no allegation that a stipulation to
that effect was left out by fraud, accident, or mistake, the plain-
tiff had no right to complain that such deposit was not made. .
If the amendment can be so construed as to contain a distinct
averment that the notes referred to were conditional, it is still
defective for the reason that it does not set forth what the con-
dition was, so that it might be determined whether it was of
such a character as that it would so affect the value of the paper
as security in the hands of the persons with whom it was de-
posited that injury would result to the plaintiff therefrom. . The
averment that "in truth and fact said notes were conditional
notes" is not sufficient without a further averment setting forth
what the condition was, so that it might be determined whether
it was of a character liable to affect the value of the notes as
security.    All the other averments are merely to the effect that
Dr. Barfield said that the notes were not, in a contingency, to be
paid; that that contingency had arisen and that he had been
released.    What Dr. Barfield said was immaterial.    There is
no allegation in the amendment that Barfield had in fact been
released.    The terms of the notes should have been distinctly
alleged, so that the court could have determined whether there
was a condition in the contract and what the character of the
condition was.    If the amendment should be so construed as to
contain merely an averment that Dr. Barfield said "that in
truth and fact" the notes were conditional, then it is clear that
the amendment was properly disallowed.    It matters not, how-
ever, which is the proper construction to be placed on the lan-
guage of the amendment; there was no error in sustaining the
demurrer to the same.

5, 6. In one of the grounds of the motion for a new trial it

was alleged, as a reason why the verdict should be set aside, that when counsel for plaintiff arose to make his opening argument to the court and jury, the judge, without the consent of plaintiff or his counsel, and without suspending the trial, left the court-room and remained out of sight of counsel and the jury the greater portion of the opening argument, which lasted seventy-five minutes, and did not return until sent for by plaintiff's counsel. In a note to this ground the judge says it is true that he did leave the bench while counsel was addressing the jury, without suspending the trial; that he can not tell exactly how long he was absent; that the purpose for which he retired was to eat a lunch, and immediately upon eating a light lunch he returned to the court-room; that the entire time he was absent from the court-room he was in the hearing of counsel but not in sight of counsel or the jury. The note concludes with the statement that no injury or inconvenience resulted to counsel or his client by the judge's absence. The first time that any question of this character came before this court was in the case of *Hayes v. State,* 58 *Ga.* 35. In that case it was held that, "In the trial of a capital case, especially during the examination of a witness for the State, the judge should not retire beyond the bar, for even a brief absence, without ordering a suspension of business until his return." Judge Bleckley in the opinion says: "When, during the trial of a capital case, the judge leaves the bench and withdraws beyond the bar, he should order a suspension of business until his return. His immediate presence tends to preserve the legal solemnity and security of trial, and upholds the majesty of law." A new trial was ordered in that case, but not solely on account of the absence of the judge. In *O'Shields v. State,* 81 *Ga.* 301, it was held that "Where, during the progress of the argument to the jury in a criminal trial, the judge stated to defendant's counsel that he desired to step out for a little while, and asked if there were any objection, and, none being made, did go out of the court-room and remained out two or three minutes, allowing the argument to go on in his absence, a new trial does not necessarily result from such action. The judge acted improperly in not suspending the trial during his absence, but no

objection was made, no motion made to have a mistrial declared in consequence of his action, and it is not pretended that any harm resulted to defendant because of it." In *Pritchett* v. *State,* 92 *Ga.* 65, it was held that it was not proper for the presiding judge to absent himself from the court-room during the trial of a murder case without suspending the trial, but that such conduct would not result in a new trial, "where it appeared that he was absent only for a few moments for a necessary purpose, during the argument of defendant's counsel; it not appearing that any injury resulted therefrom to the accused, or that a motion to have a mistrial declared was made." Attention was called in that case to the fact that in *Hayes's* case, supra, a new trial was granted, not alone on account of the absence of the judge, but also because of serious errors in the charge; and also to the fact that the ruling made is supported by the decision in *O'Shields's* case. Until the present case the three cases cited are all that are to be found in our reports relating to this question, and from these we deduce the rule applicable in such cases to be: The mere absence of the judge during the progress of the trial, when no objection is made, will not necessarily require the granting of a new trial, when the absence is only for a few moments and for a necessary purpose; and in order for such absence to become reversible error, it must appear not only that objection was made to the judge's failure to suspend the trial, but that the absence of the judge resulted in some harm to the losing party. In obedience to this rule, we are constrained to affirm the judgment in this case. If it were an open question, we would hold that the presence of the judge at all stages of the trial is absolutely necessary to its validity, and that the absence of the judge from the trial without suspending the same for any length of time, no matter how short, or for any purpose, no matter how urgent, would vitiate the whole proceeding, whether objection was made by the parties interested or not, and whether injury resulted to any one or not. The judge is such a necessary part of the court that his absence destroys the existence of the tribunal, and public policy demands that the tribunal authorized to pass upon the life, liberty, and property of the citizen should be constituted during the entire trial in the manner pre-

scribed by law. The great weight of authority is in harmony with this view. The very definition of trial carries with it the idea of the superintendence of a judge. In a recent case (Capital Traction Company v. Hoff, 174 U. S. 1, 13) Mr. Justice Gray defines trial by jury to be: "A trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to instruct them on the law and advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence." The Supreme Court of Wisconsin thus comments upon the absence of the judge without suspending the trial, during the argument of counsel to the jury: "The presiding judge of a trial court is charged with the duty of, trying the case from the opening to the close, and he ought not to abdicate his functions even for half an hour. During such absence grave errors or abuses of privilege may occur, and this court may be left to the conflicting affidavits of over-zealous attorneys or parties in interest to determine what in fact took place." Smith v. Sherwood, 70 N. W. Rep. 682. In Thompson v. People, 32 N. E. Rep. (Ill.) 968, it was said that a judge had no more authority to leave the court-room during the argument to the jury than while the evidence was being introduced or at any other stage of the trial, and that so doing was reversible error. In O'Brien v. People, 31 Pac. Rep. 230 (Col.), it was held: "The presence of the judge is essential to the organization of the court. The arguments of counsel, as well as the taking of the evidence, are a part of the trial, and the judge can not properly absent himself while such proceedings are being carried on. It is his duty to be present to superintend the proceedings, uphold the majesty of the law, and thus give protection and security to the parties interested or concerned in the trial, and also to see to it that counsel, in their arguments, do not travel outside the record, or transcend the bounds of legitimate discussion." In Turbeville v. State, 56 Miss. 793, the court uses this language: "There can be no court without a judge, and his presence, as the presiding genius of the trial, is as essential during the argument as at any other time." See also People v. Eckert, 16 Cal. 111; Shaw v. People, 3 Hun, 272;

People *v.* Shaw, 63 N. Y. App. 38; Paulin *v.* State, 57 N. W. (Neb.) 743; State *v.* Carnagy, 76 N. W. (Iowa), 805; Meredith *v.* People, 84 Ill. 479; State *v.* Smith, 49 Conn. 376; Hinman *v.* People, 20 Hun, 266; Blend *v.* People, 41 N. Y. App. 604. Even in those cases where it was held that the absence of the judge would not necessarily cause a new trial, the practice was strongly disapproved of, as it was in the two Georgia cases. It is true that all of the cases cited are of comparatively recent date; but this is probably accounted for by the fact that in other States, as in Georgia, the practice of the judge absenting himself from the court-room while the trial is in progress is also of recent origin.

What we have said covers all of the assignments of error which we think are of sufficient consequence to require special mention. After careful and patient examination of this somewhat voluminous record, we have reached the conclusion, not only that the rulings complained of were free from error, but also that the evidence demanded the verdict rendered. In such a case, following the former rulings of this court, we will have to hold that the absence of the judge from the court-room for the brief space of time indicated by his note to the motion for a new trial is not sufficient to reverse the judgment. With all possible respect for our learned brother of the circuit bench, who, so far as concerns the merits of the case, tried the same so fairly and correctly, we feel it our duty on the present occasion to say, as has been heretofore said by this court, that the judge should never leave the court-room for any purpose, for any length of time, without suspending the trial. The rulings heretofore made by this court will not be extended in the slightest. If in the present case counsel had objected to the trial proceeding in the absence of the judge, or had upon the return of the judge to the bench made a motion for a mistrial, or if, notwithstanding a request by counsel to suspend, the judge had compelled counsel to proceed in his absence, the case would not have been controlled by the former decisions.

Counsel for defendant in error asked that damages be awarded against the plaintiff in error for bringing the case to this court for delay only. While the assignments of error in which com-

plaint is made of the judge's rulings are without merit, still we think the complaint made in the ground of the motion for a new trial last dealt with authorized the plaintiff in error to bring the case here for adjudication. While we think the question is controlled by former decisions, the fact that it is so controlled is not so obvious as to authorize the awarding of damages for bringing the point here for adjudication.

<div align="center">Judgment affirmed. All the Justices concurring.</div>