BURCHFIELD et al. v. HODGES.—197 S. W. (2d) 815.

Eastern Section.   March 14, 1946.

Petition for Certiorari denied by Supreme Court, June 29, 1946.

O. M. Connatser, of Sevierville, for appellants.

Wm. J. Barron, of Morristown, for appellee.

HALE, J. Both the complainants and the defendant have appealed from the Chancellor's decision. His findings of fact and conclusions of law are as follows:

"1) Complainants are the owners of a tract of land containing 300 acres, more or less in Sevier County. On this tract was a large amount of timber suitable for lumber.

"2) Defendant, W. E. Hodges, is in the general lumber business which is used in building and construction work. He handles mostly pine and hardwood, and he

buys boundaries of timber and has the same cut and manufactured into lumber. He sells lumber wholesale and retail. He does not engage in the acid wood, cordwood or pulpwood business generally.

"3) The defendant, A. J. Bandy, is a typical sawmill man, having engaged in the lumber and sawmill business for a number of years. He cuts logs in the woods and manufactures them into lumber or portable mills. That has been his occupation for many years. He has not been engaged in the acidwood, cordwood and pulpwood business. Prior to June 24, 1941, defendant, A. J. Bandy, learned of the tract of land or timber owned by complainants and forthwith sought to purchase same, and found a willingness on the part of complainants to sell. Defendant Bandy and complainants reached a tentative agreement with respect to the price, to-wit: $20,000.00 cash, upon the execution of a conveyance for said timber. This was more than the defendant Bandy could command at the time, and defendant Bandy got in touch with his co-defendant, W. E. Hodges, who he knew could meet the terms of complainants. This was agreed to by W. E. Hodges, provided Mr. George Barnard, his timber cruiser, recommended the purchase. Mr. Barnard along with Mr. Bandy cruised said timber and recommended the purchaser of the boundary by Mr. W. E. Hodges.

"4) After the cruise, complainants delivered their title papers to defendant Bandy, who took them to defendant Hodges, who placed them with John R. King, attorney, to prepare papers conveying complainant's timber to defendant Hodges. This proposed conveyance carried with it certain conditions and restrictions, which were later placed in it before its execution. After the title papers were prepared for complainants, Mr. Hodges turned them over to Mr. Bandy together with two checks

payable to complainants, one in the sum of $18,000.00 and one in the sum of $2,000.00 being the amount of the consideration in the proposed conveyance. The check for $2,000.00 issued, as above stated, was because defendant Bandy had informed his co-defendant Hodges he might be able to purchase said timber for less than $20,000.00. Both defendants knew at the time that complainants would accept $20,000.00 for the timber. That if the timber should be purchased for less, such sum under $20,000.00 was to be turned back to Mr. Hodges.

"The record discloses that the amount agreed on for the timber at the date of the execution of the conveyance was $19,000.00. Defendant Bandy delivered the two checks to complainant, L. C. Burchfield, who in turn issued check to Mr. Bandy for $1,000.00, however, the record discloses that no part of this was returned to defendant Hodges. He paid the full consideration set out in the conveyance. The final transaction, as well as the completion of the conveyance was consummated in the office of Zirkle and Wynn in Sevierville.[1] The granting clause of said conveyance is as follows:

" 'Know all men by these presents: That for and in consideration of the sum of $20,000.00 to us in hand paid, the receipt of which is hereby acknowledged, we, J. R. Burchfield, L. C. Burchfield, G. W. Burchfield, have bargained, sold and by these presents do hereby bargain, sell, transfer and convey to W. E. Hodges, all of our right, title, interest and claim in and to all of the timber and forest products on the following tract of land: (Description omitted.)

"At the end of this description are the words:

" 'Containing 300 acres be the same more or less.'

---

[1] Attorneys representing the Burchfields.

After this clause, the following exception is made: *'All lands and timber belonging to L. C. Burchfield between Highway No. 35 and the wire fence about one-fourth mile south and southeast of said Highway are excepted.'*[2]

" 'For the same consideration we also have granted and do hereby grant to Hodges two points of ingress and egress from said Highway to said boundary of timber.' The habendum clause is as follows:

" 'To have and to hold to him, the said Hodges, his heirs and assigns, said timber and forest products.'

"The next paragraph is the covenant of warrant and is not copied herein.

"Following the covenant of warranty is the following clause:

" 'It is mutually agreed and distinctly understood that all of said timber and forest products are to be cut and removed from the ground within a period of four years from this date and that said Hodges or his vendees have full right to enter upon said ground for the purpose of cutting, logging and manufacturing said timber and forest products into lumber, and to that end have the right to set saw mills on said ground and to stack lumber thereon and to make such use of said ground as may be necessary to accomplish the manufacture of said timber and forest products into lumber, and the removal of the same therefrom. *Possession of all lands not necessary for the foregoing purpose will be restored to the parties of the first part as said timber is cut and removed.'*[2]

"The record discloses that complainants, L. C. and J. R. Burchfield would not accept said conveyance unless the clause italicized above (written in long hand in the conveyance) was inserted therein.

---

[2]Italics made by Burchfield's Attorneys.

"With the insertions, written in said instrument in long hand, underscored above, the defendant A. J. Bandy delivered the two checks issued by his co-defendant, W. E. Hodges. It further appears that the execution of said agreement, the conditions and restrictions set out in said conveyance was made between the complainants and the defendant, A. J. Bandy, for and on behalf of his co-defendant, W. E. Hodges, it appearing that defendant Hodges had never been on the land, upon which said timber was located at that time.

"On July 5, 1941, W. E. Hodges conveyed said timber to his co-defendant, A. J. Bandy for the sum of $20,000.00. This consideration was represented by a promissory note due four years from date executed by A. J. Bandy, bearing date with the conveyance with interest from date and providing for ten per cent attorney fees. Said note is secured by lien in the face of the conveyance. In addition to this security, defendant, W. E. Hodges, was secured by chattel mortgage on personal property of defendant Bandy.[3]

"Shortly after the conveyance of said timber by defendant Hodges to his co-defendant, A. J. Bandy, he entered upon the premises and began cutting timber of sufficient size to be manufactured into lumber. He cut nothing but such as could be manufactured into lumber on a portable sawmill. Defendant made at least ten sawmill sites where he manufactured the timber into lumber, and he cut practically all the timber that could be manufactured into lumber. However, there is scattered over this entire three hundred acres, witnesses testify, any-

---

[3]The deed, etc., were immediately registered in Sevier County.

where from fifteen thousand to ninety thousand feet of standing timber, which could be cut into lumber.[4]

"Defendant, A. J. Bandy, continued the cutting of this timber and manufacturing the same into lumber until about July or August 1943. He then removed his mill or mills from the lands of complainants and informed them he had finished cutting the timber and was restoring to them possession of the land together with the cull lumber left on the premises. The gates had been kept locked by defendant Bandy and after surrendering possession complainants likewise locked the gates, for the purpose of prohibiting trespass upon their land.

"Approximately one year after defendant attempted to turn possession of the property to complainants, his co-defendant, Hodges, sent other employes to the land in question, but possession thereof was refused by complainants. Thereupon defendants employes cut the chains off the gates with a hack saw, entered upon the land and began cutting of small trees that were only large enough for acid wood, cordwood or pulpwood, and not of sufficient size to be manufactured into lumber.

"With respect to the exception excluding timber on the tract of land favorable to L. C. Burchfield, which is written in long hand following the words 'three hundred acres more or less,' in the original conveyance, the Court finds that this land and timber was pointed out to defendant Bandy, (who manipulated the trade for the timber and with the complainants), and upon whose recommendation the deed was made to W. E. Hodges with said exceptions written therein before it was signed and the defendant, A. J. Bandy, under this record, accepted the

---

[4]There is also a considerable quantity of timber fit for acid wood, firewood, slabs, etc., on this land.

deed for and on behalf of Mr. Hodges and no question had been raised with respect thereto until the institution of this suit. It appears however that title to a part of the land described in the exception rested in J. R. Burchfield, but complainant L. C. Burchfield purchased the same from J. R. Burchfield before the execution of the conveyance, under date of June 24, 1941. So that regardless of whether or not the title to the land rested in J. R. Burchfield or L. C. Burchfield or both, Mr. Hodges through his representative, A. J. Bandy, received all that the complainant and defendant, A. J. Bandy, representative of Mr. Hodges intended that he should have, with all of said timber on the land accepted excluded, and he is not in a position to insist otherwise.

"It appears that the fiat for temporary injunction was granted in this case on September 4, 1944, and injunction issued same date and served September 6, 1944.

"From a construction of the foregoing facts the Court is of the opinion:

"a) That there is considerable timber on said boundary of 300 acres that would make lumber and that the contention of complainants to the contrary is not well taken;

"b) That the defendant Hodges was only to cut timber as could be manufactured into lumber and it was never the intention of the parties that the grantee or his vendee should remove any timber other than such as could be manufactured into lumber:

"c) That the defendant Hodges has not by his acts or admissions abandoned his right and interest in the timber;

"d) That the defendant A. J. Bandy left on the ground about 3,000 feet of cull lumber which the complainants Burchfield agree that the defendant Hodges may remove

if he desires and the defendant Hodges may, therefore, under the terms of this decree remove said lumber.

"e) That it was not the intention of the grantors to sell nor the grantee to purchase any portion of the timber lying between the highway and the fence referred to in the pleadings and that the complainant, L. C. Burchfield, purchased that portion of the J. R. Burchfield tract prior to the sale of said timber to the defendant Hodges, and that the defendant Hodges never purchased or made any claim to said boundary of timber lying between the highway and the fence and that the defendant Bandy received the timber deed as the agent of his co-defendant Hodges well knowing that not only the L. C. Burchfield but the J. R. Burchfield timber between the highway and the fence had been excepted therefrom and that the defendant Hodges is estopped from claiming any of the timber between said highway and the fence, as it had been sold prior to the execution of the original conveyance to him;

"f) That the conveyance, according to the terms of the instrument, on the date the injunction was served in this cause, was not terminated nor had all the timber been removed suitable for lumber on that date:

"g) That it was the intention of complainants and defendants that nothing but such as could be manufactured into lumber was to be cut.

"The Court, therefore, holds, orders, adjudged and decrees that the injunction issued in this cause be modified so that the defendant Hodges may go upon said land for the purpose of cutting the remaining timber thereon into lumber and his time for cutting and removing said timber will be extended nine months and 18 days from the date of the entry of the decree in this cause, being the balance of the time of the contract but the injunction

will be and remain perpetual in so far as defendant Hodges and his vendees undertake to cut small growth for acidwood, pulpwood and cordwood. The injunction will be made perpetual with respect to the removal of any timber from the land of the complainants lying between the highway and the fence paralleling said highway and some distance therefrom and going through the edge of said boundary of timber.

"The Court further orders, adjudges and decrees that defendant's cross bill is without merit and same is dismissed both as to complainants Burchfield and the codefendant, A. J. Bandy.

"The complainants are taxed with one-fourth of the costs and the defendant Hodges with three-fourths of the costs of this cause for which execution may issue.

"The Court overrules each and every exception made by complainants and defendants as not being of sufficient merit to prevent the Court reaching a proper conclusion."

We concur in such findings of fact with the explanations made as indicated by marginal notes made by us, and with the additional matters herein set forth. We cannot agree with the conclusion (b) that the defendant Hodges "was only to cut timber as could be manufactured into lumber," etc.

The contract in question was prepared for Mr. Hodges by an able and experienced member of the Morristown bar. The portions italicized were interlined on the advice of complainant's attorneys, likewise able and experienced, of the Sevierville bar.

There is no claim of fraud, accident or mistake in the execution of the contract.

Complainants insist, and the Chancellor concluded, that this instrument covered only such timber as could be manufactured into lumber and that it was never the

intention of the parties that the grantee could remove timber fit only for acid wood, pulp wood, etc.

It is argued that the next to the last paragraph requires us to so construe the contract. We must construe the contract as a whole, trying to give effect to every part thereof. "The better rule in all cases is to read the whole instrument and give effect to every part if possible, and thereby reach its true meaning, and not resort to artificial or arbitrary rules until the former rule is exhausted." Stratton v. Thompson, 78 Tenn. 229, at page 238.

The first clause conveys "all of the timber and forest products," etc. "It has been said that the word 'all' is a term of such uniform use and well understood meaning that it seems unnecessary to define it; and that it is a very comprehensive word . . ." 3 C. J. S., All, p. 867.

We cannot blind ourselves to the well known usage in drafting conveyances of timber. Ordinarily there is a provision to limit it to "merchantable" timber so many inches in diameter at the butt so many inches from the ground.

Mr. Hodges testified that "Lumber and timber people refer to 'forest products' as all growth of commercial value and not necessarily commercial value and take anything that grows in the forest for chemical wood, acid wood, slabs and fire wood and merchantable timber." There is no evidence to the contrary. Able counsel for both the grantors and grantee went over this contract and it is remarkable that no question was made as to the inclusiveness of the language used. Not content with saying "all of the timber" the contract then adds "and forest products," which in our opinion was used in an effort to prevent any misunderstanding of the effect of the broad language used in the context. The complainant

James R. Montgomery in testifying with reference to whether or not any standing timber had been left, said "Bandy" (who had contract for cutting and sawing the timber) "had a perfect right to cut any and all." The pleadings indicate that the construction contended for was something of an afterthought and was not relied upon at the beginning of the litigation.

██ Nor can we agree that forest products had reference to articles to be manufactured from timber cut and removed. An agreement to sell "forest products" can only mean timber on the land and is an interest in land. Edgcomb v. Clough, 275 Pa. 90, 118 A. 610. The contract speaks of such products as then existing, and it was contemplated that they be "cut and removed" and to that end facilities were granted "to accomplish the manufacturing of said timber and forest products into lumber, and the removal of same therefrom." It is true that "lumber" is ordinarily understood as being the boards sawed or split from the timber, but we think it was not used in such a restricted sense in this contract. If so, then it would follow that the cross-ties, tan bark, laps, slabs, etc., would not pass. This was not the construction given by the parties. An estate granted absolutely will not be cut down by a subsequent clause which, if it raises any doubt, will be resolved against the limitation and in favor of the estate. See Ballard v. Farley, 143 Tenn. 161, 226 S. W. 544; Hicks v. Sprankle, 149 Tenn. 310, 257 S. W. 1044; Simpson v. Simpson, 160 Tenn. 645, 28 S. W. (2d) 349; Trapp v. McCormick, 175 Tenn. 1, 130 S. W. (2d) 122.

It is argued that the timber remaining is without value; that it would cost more to market it than it would yield. We are not impressed with this argument. It is for the conveyee to say whether or not he desires to market the timber and forest products paid for by him. The record

does not reveal Mr. Hodges as being willing to injure himself in order to injure the Burchfields.

■ The result is that we think all growing timber passed under this contract and that Mr. Hodges was within his rights in attempting to remove it unless prevented by the next claim presented by the complainants.

The next insistence of the complainants is that pursuant to the last clause of the contract the defendant returned and restored possession of the property and is therefore estopped to now claim any timber or forest products standing thereon.

We have pointed out that the Chancellor held that the defendant Hodges had not abandoned his rights and interest in the timber and, we add, the forest products.

■■ Hodges took title to this timber and forest products. By instrument dated July 5, 1941, acknowledges the same date, Hodges conveyed this timber and forest products to Bandy, who was to do certain things set out with particularity in the deed. This was registered soon thereafter. A vendor's lien was retained by Hodges and it was stipulated that if Bandy abandon the work or cease operations for as much as thirty days Hodges could re-enter and take possession of the property. The weight of the proof is that Bandy told the Burchfields that he was through cutting. Did he by doing so divest all title out of himself and Hodges and return it to complainants? We think not. First, an examination of the instrument executed by Hodges to Bandy shows it to be more than a conveyance, being in the nature of working contract whereby Bandy was to cut, saw and sell to or through Hodges his manufactured product. He had no authority, actual or implied, to deprive Hodges of the timber and forest products remaining. There is a well known principle of law that favors the enforcement and preserva-

tion, rather than the forfeiture, of rights. Allen v. Effler, 144 Tenn. 685, 235 S. W. 67; 12 Am. Jur., Contracts, Secs. 435, 436, p. 1015 et seq. Second, if we treat Hodges as an innocent lienor of record, then it would result that Bandy could not do anything to defeat his rights. Ibid.

Bandy could not have conveyed this timber and forest products back to the Burchfields without the consent of Hodges, the lienor. If he couldn't do it by conveyance it is difficult to understand how he could do it ore tenus or by way of forfeiture. We think this part of the Chancellor's decree must be sustained. Complainants' exceptions in this respect are overruled.

█ Third in behalf of Hodges it is urged that the Chancellor's decree with reference to the timber reserved is erroneous. We cannot so agree. The complainants pointed out to Bandy the timber between the highway and wire fence and it was agreed between them and set out in the contract that it would not pass. An erroneous recital of the ownership in L C. Burchfield, who only owned a part, would not limit the reservation to the particular part owned by him. The defendant got exactly what the parties agreed to sell and what Bandy agreed to buy, and the lines of which were observed by him in cutting of this timber. The defendant got exactly what the parties agreed was to be conveyed; he is not entitled to the relief sought. Pittsburgh Lumber Co. v. Shell, 136 Tenn. 466, 189 S. W. 879.

We think this disposes of all assignments made by appellants and appellee. The decree of the Chancellor will be modified, and as modified affirmed. The injunction will stand dissolved. If the defendant so desires the cause will be remanded to the Chancery Court to ascertain what, if any, damages defendant suffered by reason of the wrongful suing out of the injunction in this cause.

The decree will allow the defendant four years from June 24th, 1941, plus such time as the injunction has been in force, in which to cut and remove the timber and forest products. The complainants and surety on appeal bond will pay two-thirds of all cost (below and on appeal) and defendant and surety on his appeal bond will pay one-third of all cost (below and on appeal).

Burnett and McAmis, JJ., concur.