48601. KNOX JEWELRY COMPANY, INC. v. CINCINNATI INSURANCE COMPANY.

PANNELL, Judge. This is an action by Cincinnati Insurance Company against Knox Jewelry Company, Inc., a consignee, upon a subrogation claim. The Cincinnati Insurance Company had paid Ewing Brothers, a jewelry firm, for a loss sustained by it when certain diamonds and jewelry, consigned by Ewing Brothers to Knox Jewelry Company, Inc., were stolen in a robbery while in possession of the consignee. Knox Jewelry Company, Inc. had refused to pay the value of the jewelry upon demand by Ewing Brothers. The contract between the consignor and consignee was evidenced by what was referred to by the parties as a memoranda, which consisted of a printed form bearing the name of Ewing Brothers, a space for the name of the consignee, a description of the merchandise and its price with the following printed thereon: "These goods are not sold but are consigned on memorandum for not more than 5 days and are sent for inspection and remain the property of Ewing Brothers, and are to be returned in as good condition as when shipped on demand or the equivalent in cash unless a specified agreement has been made for their purchase or a bill of sale rendered. The Consignee assumes all risks in respect to these goods and agrees to pay all transportation charges. Acceptance of these goods shall be deemed confirmation of these terms." Ewing Brothers had, as a matter of practice, waived the 5 day limitation, and there was no claim or evidence of negligence on the part of the consignee,

and no dispute as to the value of the stolen jewels. The trial judge granted the insurance company's motion for summary judgment. The defendant appealed. The sole question is whether Knox Jewelry Company, Inc. was obligated by the terms of the contract to pay to the plaintiff assignee of Ewing Brothers the value of the stolen jewelry. *Held:*

1. The consignment contract here creates a relationship of bailor and bailee. *Moore v. King,* 89 Ga. App. 521 (60 SE2d 74); *Claude S. Bennett v. Vanneman,* 95 Ga. App. 140 (97 SE2d 375).

2. Assuming, without deciding, that the evidence was sufficient to show these sales were trial sales or sales subject to approval or return, the evidence also shows without dispute that as a matter of custom between the parties the 5 day provision was waived by the consignor. The case of *O'Donnell v. Wing,* 121 Ga. 717 (49 SE 720), therefore, has no application. As to rights of creditors of a buyer on sales subject to approval and return, see Code §§ 109A-2—326, 109A-2—327.

3. The defendant consignee was obligated to return the property consigned on demand, or its equivalent in cash. It also assumed "all risks in respect of these goods," the goods consigned. "All" means the whole of — used with a singular noun or pronoun, and referring to amount, quantity, extent, duration, quality or degree: as, all the wheat; all the years; all this. 2. The whole number or sum of — used collectively, with a plural noun or pronoun expressing an aggregate. 3. Every member of individual component of; each one of — used with a plural noun. In this sense, "all" is used generically and distributively. "Every" and "each" are synonyms of "all" and agree in inclusiveness but differ in stress. "All" collects, "every" divides, "each" distributes. "All" refers rather to the aggregate under which the individuals are assumed than to the individuals themselves; as, all men are mortal. "Every" refers to the individuals but never denotes the separate individual as, every man must die. "Each" refers to the separate individual but never denotes this or that one in particular, as, each must meet death alone. Webster's International Dictionary (2d Ed), definitions of the word "all." A more comprehensive word cannot be found in the English Language. Moore v. Va. Fire & Marine Ins. Co. (Va.) 28 Gratt. 508, 516 (26 AR 373). "All" is a very comprehensive word of uniform use and well understood meaning. Burchfield v. Hodges, 29 Tenn. App. 488 (197 SW2d 815). The word "all," standing alone, means exactly what it imports; that is, nothing less than

all. In re: Staheli's Will, 57 NYS2d 185, 188. Let us then look to the word to which the word "all" applies, — the word "risks." We think this is proper, for if, in the context the word "risks" has a more limited meaning, then the word "all" would have a similar limitation. For example, where there was a provision in the Corporation Act of 1938 of this state, that all "corporations" shall be continued for three years after dissolution for certain purposes, it was held by the Supreme Court of this state (*Trust Co. of Ga. v. Mortgage-Bond Co. of N. Y.,* 203 Ga. 461 (46 SE2d 883)) that while the word "all" standing alone is a completely comprehensive term and the statement "all corporations" would seem to include foreign corporations if nothing else should be considered; yet, since the term was part of a statute which applied to domestic corporations, they construed the term as meaning all domestic corporations. We find nothing in the language of the contract that seeks to modify or qualify the word "risks" as being applicable only to certain kinds of risks. "Risk" means hazard; danger; peril, exposure to loss, injury, disadvantage or destruction. Webster's International Dictionary (2d Ed). "Risk" comprises all elements of danger. Kruger v. Exeter Mfg. Co., 84 N. H. 290 (149 A 872). It was held in Commonwealth v. Evans, 304 Pa. 445 (156 A 139) that the term "risk" within a provision in a building contract that work shall be at contractor's risk, refers to every kind of risk, not only fire. We find nothing in the contract here to classify the word "risks" as applying to a particular type, or types of risks. Therefore, the terms "all risks" is complete and comprehensive unless there is some provision of law or public policy affecting the situation. As we construe the language in the contract here, the consignee assumed all risks of loss, damage to, or destruction of the consigned property. There may be an exception, however, as to risks for the consignor's wilful acts or negligent acts unless such risks are particularized rather than included in general or comprehensive language. See *Batson-Cook v. Ga. Marble Co.,* 112 Ga. App. 226, 230 (144 SE2d 547) and compare *Kraft Foods v. Disheroon* 118 Ga. App. 632 (165 SE2d 189). But this is not a question presented for decision here, and we do not rule upon it.

4. *Gillham v. Federal Express Money Order, Inc.,* 112 Ga. App. 171 (144 SE2d 557), a case involving a contract between a bailor money order concern and its issuing agent bailee, the contract provided "Seller shall be responsible for drafts [money orders] and funds in its hands or those of its employees, agents and

servants." The court in that case held the words "responsible for" did not enlarge upon the bailee's duty to exercise ordinary care under Code § 12-103, and that the bailee was not liable to the bailor for funds of the bailor stolen from the bailee. Had the contract here merely provided that the consigned goods were "to be returned in as good condition as when shipped on demand or the equivalent in cash," and no more, we would be inclined to agree with appellant that the *Gillham* case would control here; but in addition to contracting merely that it was responsible for a return of the merchandise or its cash equivalent, the bailee here went further and assumed "all risks" as to the consigned property, using what may be referred to as an insurance term, and in effect agreed to return to goods or pay the equivalent in cash, and in addition assumed all risks to the property while in its hands.

In our opinion, the trial court did not err in granting summary judgment to the plaintiff-appellee.

5. Appellee seeks damages under Code § 6-1801 on the grounds of an appeal for delay only, insisting that the construction of the contract here is so unquestioned as to show conclusively appellant made a frivolous appeal; although appellee, in its brief, cited no authority whatsoever on the question of the proper construction of the contract. We think there is enough question here posed by the cases cited, even though distinguished by us, as would prevent us from applying the sanction of Code § 6-1801, supra. The motion for damages is denied. See *Horne v. Rogers,* 110 Ga. 362, 373 (35 SE 715); *Coffee v. McCaskey Register Co.,* 7 Ga. App. 425, 429 (66 SE 1032).

*Judgment affirmed. Eberhardt, P. J., and Stolz, J., concur.*

SUBMITTED SEPTEMBER 6, 1973 — DECIDED JANUARY 7, 1974.

*Long, Weinberg, Ansley & Wheeler, Charles M. Goetz, Jr.,* for appellant.

*Savell, Williams, Cox & Angel, Edward L. Savell, William S. Goodman,* for appellee.